## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00456-SCT

*PHE, INC. d/b/a*
*ADAM & EVE, INC.,*
*ZJ GIFTS, LLC d/b/a*
*CHRISTAL'S,*
*JIM HILLEGAS,*
*MIKE MILLER,*
*and JANE DOE*

*v.*

*STATE OF MISSISSIPPI AND*
*JIM HOOD, IN HIS OFFICIAL*
*CAPACITY AS THE ATTORNEY GENERAL*
*OF THE STATE OF MISSISSIPPI*


DATE OF JUDGMENT: 3/7/2003
TRIAL JUDGE: HON. WILLIAM HALE SINGLETARY
COURT FROM WHICH APPEALED: HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS: ROBERT B. McDUFF
DANIEL MACH
JULIE M. CARPENTER
ATTORNEY FOR APPELLEES: HAROLD EDWARD PIZZETTA, III
NATURE OF THE CASE: CIVIL - CONSTITUTIONALITY OF STATUTE
DISPOSITION: AFFIRMED - 03/18/2004
MOTION FOR REHEARING FILED:
MANDATE ISSUED:


**BEFORE WALLER, P.J., COBB AND GRAVES, JJ.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Section 97-29-105 of the Mississippi Code provides that knowingly selling, advertising, publishing

or exhibiting any three-dimensional device designed or marketed as useful primarily for the stimulation of

human genitalia ("sexual devices") is illegal.[1]  Miss. Code Ann. § 97-29-105 (Rev. 2000).  PDE, Inc. d/b/a

Adam & Eve, Inc., and ZJ Gifts, LLC d/b/a Christal's ("vendor plaintiffs") sell the type of sexual device

which is prohibited by the statute.  Adam & Eve uses the United States Postal Service to advertise and sell

its products.  Christal's was a store operating in Southaven, Mississippi, which sold, inter alia, the prohibited

sexual devices, lingerie, novelties, greeting cards, video cassettes, and magazines to customers over 18

years of age.  Christal's alleges that it is now out of business due to governmental efforts to enforce § 97-

29-105.[2]  Jane Doe, Jim Hillegas and Mike Miller ("user plaintiffs") are Mississippi residents who wish to

buy the sexual devices.

¶2.     The vendor plaintiffs and the user plaintiffs sued the State of Mississippi and its Attorney General

in Hinds County Chancery Court seeking a declaratory judgment that § 97-29-105 violates Article 3,

sections 13, 14 and 32 of the Mississippi Constitution.[3]  The vendor plaintiffs allege that the statute unduly

---

[1]Miss. Code Ann. § 97-29-105 (Rev. 2000) provides as follows:

> A person commits the offense of distributing unlawful sexual
> devices when he knowingly sells, advertises, publishes or exhibits to
> any person any three-dimensional device designed or marketed as
> useful primarily for the stimulation of human genital organs, or offers to
> do so, or possesses such devices with the intent to do so.  A person
> commits the offense of wholesale distributing unlawful sexual devices
> when he distributes for the purpose of resale any three-dimensional
> device designed or marketed as useful primarily for the stimulation of
> human genital organs, or offers to do so, or possesses such devices
> with the intent to do so. . . .

[2]The City of Southaven was originally a defendant to the suit, but it was dismissed.

[3]Article 3, § 13: "The freedom of speech and of the press shall be held sacred; . . . .

Article 3, § 14: "No person shall be deprived of life, liberty, or property except by due process of law."

Article 3, § 32: "The enumeration of rights in this constitution shall not be construed to deny and

2

burdens their rights to advertise truthfully their products.  The user plaintiffs allege that the statute violates

their right to be free from unwarranted governmental intrusion into their private and legal sexual practices.

They also seek a permanent injunction ordering governmental entities to cease taking actions to enforce the

statute.

¶3.      The State filed a motion for summary judgment contending that

> 1.      Limiting the commercial distribution of sexual devices to matters of medical, scientific, or historical concern does not violate any recognized constitutional right.  The right to privacy does not require the state to provide unfettered access to any and all sexual devices under the guise of "sexual freedom"; and

> 2.      Restricting advertisements regarding sexual devices to promotions associated with medical, scientific, or historical endeavors serves a substantial government interest consistent with the contours of regulated commercial speech.

¶4.      The chancellor granted summary judgment to the State, finding that the plaintiffs had failed in their

burden to prove that the statute was unconstitutional.  He held that "the Mississippi statute . . . merely limits

the commercial distribution of sexual devices when such distribution is unrelated to a valid medical, scientific

or historical purpose," and that there was no "precedent for extending the right to privacy to include the

commercial distribution of sexual devices for any purpose."  Finally, the chancellor found that the

restrictions on

advertising and distribution were "limited and directly advance the substantial government interest of

protecting public physical and mental health and supporting public morality."

¶5.      From this judgment, the vendor plaintiffs and the user plaintiffs appeal.

## STANDARD OF REVIEW

impair others retained by, and inherent in, the people."

3

¶6.    A Mississippi court may strike down an act of the legislature "only where it appears beyond all reasonable doubt" that the statute violates the clear language of the constitution. *James v. State*, 731 So. 2d 1135, 1136 (Miss. 1999).  "All doubts must be resolved in favor of validity of a statute," and any challenge will fail if the statute "does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity." *Cities of Oxford, Carthage, Starkville & Tupelo v. Northeast Miss. Elec. Power Ass'n*, 704 So. 2d 59, 65 (Miss. 1997).  As we have stated,

> The rule is well established that any exercise of police power is valid if it has for its object the protection and promotion of the public health, safety, morality or welfare, if it is reasonably related to the attainment of that object, and if it is not oppressive, arbitrary or discriminatory.

*Hollywood Cemetery Ass'n v. Bd. of Mayor & Selectmen of City of McComb City*, 760 So. 2d 715, 718-19 (Miss. 2000).

¶7.    We employ a de novo standard of review of a trial court's grant or denial of a summary judgment and examine all the evidentiary matters before it--admissions in pleadings, answers to interrogatories, depositions, affidavits, etc.  The evidence must be viewed in the light most favorable to the party against whom the motion has been made.  If, in this view, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, summary judgment should forthwith be entered for the movant. Otherwise, the motion should be denied.  *Hurdle v. Holloway*, 848 So. 2d 183, 185 (Miss. 2003).

## DISCUSSION

I.    **WHETHER § 97-29-105's BAN ON THE SALE OF SEXUAL DEVICES VIOLATES THE USER PLAINTIFFS' CONSTITUTIONAL RIGHT TO PRIVACY.**

*The Right to Privacy*

4

¶8.     "The positive law of this state affords each person a substantial zone of freedom which, at his election, he may keep private.  This zone surrounds person and place and without his consent may not be invaded by other persons . . . or by the state."  ***Young v. Jackson***, 572 So. 2d 378, 381 (Miss. 1990) (citations omitted).  This right of privacy is the "most comprehensive and guarded right emanating from the Mississippi Constitution," ***Pro-Choice Miss. v. Fordice***, 716 So. 2d 645, 654 (Miss. 1998), and "the right most valued by civilized man."  ***In re Brown***, 478 So. 2d 1033, 1039 (Miss. 1985) (citation omitted).

¶9.     The right to privacy includes the right to "autonomous bodily integrity." ***Pro-Choice***, 716 So. 2d at 653.  "[A] right to privacy exists for citizens and that right entitles citizens 'to be left alone.'" ***Miller v. State***, 636 So. 2d 391, 394 (Miss. 1994) (quoting Warren and Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 193, 195 (1890)).  "It requires little awareness of personal prejudice and human nature to know that, generally speaking, no aspects of life [are] more personal and private than those having to do with one's sexual organs and reproductive system." ***Young***, 572 So. 2d at 382.  "The right to privacy is so personal that its protection does not require the giving of a reason for its exercise.  That one is a person, unique and individual, is enough." ***In re Brown***, 478 So. 2d at 1040.

*Whether the Right to Privacy Includes Access to Sexual Devices*

¶10.    We find that there is no "independent fundamental right of access to purchase [sexual devices]," just as the United States Supreme Court found that there was no independent fundamental right of access to purchase contraceptives.  ***Carey v. Population Servs. Int'l***, 431 U.S. 678, 688, 97 S. Ct. 2010, 2018, 52 L. Ed. 2d 675 (1977).[4]  However, the plaintiffs argue that "such access is essential to the exercise

---

[4]Although there are no federal constitutional claims before us in this case, we do consider federal precedents in construing the Mississippi Constitution.

of the constitutionally protected right [of privacy to engage in adult consensual sexual activities]." ***Id.***, 97 S. Ct. at 2018.

¶11.    Indeed, the United States District Court of the Northern District of Alabama, in finding that a similar statute was unconstitutional, concluded that the "prohibition of the sale of sexual devices imposes a significant burden on the right of married and unmarried persons to sexual privacy, in that it severely limits their ability to access, and thus to use, sexual devices within their sexual relationships." ***Williams v. Pryor***, 220 F. Supp. 2d 1257, 1298 (N.D. Ala. 2002).  We find persuasive the decisions of the Georgia, Louisiana and Texas courts which have explicitly rejected attempts to redefine expand the right to privacy to include the commercial distribution of sexual devices.  *See **Pierce v. State***, 239 S.E.2d 28, 29 (Ga. 1977); ***State v. Brenan***, 772 So. 2d 64 (La. 2000); ***Yorko v. State***, 690 S.W.2d 260 (Tex. Crim. App. 1985).  The Alabama federal court compared access to sexual devices to access to contraceptives. ***Williams***, 220 F. Supp. 2d at 1298.  We disagree and find that society's interest in protecting the right to control conception is of greater magnitude than the interest in protecting the right to purchase sexual devices.

¶12.    People who are sexually dysfunctional (presumably those people who cannot achieve sexual enjoyment and fulfillment without a sexual device) should be treated by a physician or a psychologist.[5] Sexual dysfunction may be caused by medicinal side effects, diabetes, hormonal problems, endocrine problems, cardiovascular illness, neurological impairments, psychological problems or hypertension. Miss.

---

[5]In his affidavit in the record before us, Stanley Smith, Ph.D., the Director of Psychology for the State Department of Mental Health at Ellisville State School and the Clinical/Forensic Director at the Centurion Counseling Center in Hattiesburg, states that medical standards of practice require a patient suffering a sexual dysfunction to be thoroughly evaluated by a physician to determine if there is a medical cause of the dysfunction.

Code Ann. § 97-29-107(1)(b) (Rev. 2000) expressly provides that physicians and psychologists may prescribe sexual devices for their patients, and the patients may purchase the sexual devices from the physicians and psychologists. The novelty and gag gifts which the vendor plaintiffs sell have no medical purpose.

¶13. The only conclusion we can reach is that the sale of or access to sexual devices sold by novelty stores is not protected under the right to privacy guaranteed under the Mississippi Constitution.

¶14. Plaintiffs contend that we must apply the strictest level of scrutiny when we analyze § 97-29-105. Because we conclude that access to sexual devices is not protected by the constitutional right to privacy, this issue is moot.

**II. WHETHER § 97-29-105's PROHIBITION OF THE ADVERTISEMENT, SALE AND DISTRIBUTION OF SEXUAL DEVICES VIOLATES THE VENDOR PLAINTIFFS' CONSTITUTIONAL RIGHT TO FREE SPEECH.**

*The Sale and/or Distribution of Sexual Devices*

¶15. The United States Supreme Court has held that certain sexually expressive items are "entitled to some quantum of protection under the First Amendment [the right to free speech]." ***City of Erie v. Pap's A.M.***, 529 U.S. 277, 285, 120 S. Ct. 1382, 1388-89, 146 L. Ed. 2d 265 (2000). The items sold by Adam & Eve and Christal's, however, are at best "symbolic speech," falling within the "outer ambit of the protection" and subject to evaluation under ***United States v. O'Brien***, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968). As Justice Scalia has stated, "[T]he sordid business of pandering is constitutionally unprotected[.] [T]he sale of material solely to produce sexual arousal does not escape regulation because the [sexual devices] has been dressed up as speech, or in other contexts might be

recognized as speech." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225-26, 110 S. Ct. 596, 604-05, 107 L. Ed. 2d 603 (1990) (Scalia, J., concurring).

¶16. Under the four-part *O'Brien* content-neutral test used for analyzing symbolic speech, government regulation is sufficiently justified if (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; and (4) the incidental restriction on alleged freedom of speech is no greater than is essential to the furtherance of that interest. *O'Brien*, 391 U.S. at 377, 88 S. Ct. at 1679.

¶17. Applying these factors to the case at hand, the plaintiffs have not questioned the State's constitutional power to regulate businesses which sell and/or distribute sexual devices. As discussed under Issue I, the statute furthers important or substantial governmental interests. The plaintiffs do not contend that the purpose of the Legislature in enacting the statute was to suppress free speech. Finally, the prohibition on the sale and/or distribution constitutes only an incidental restriction on the vendor plaintiffs' alleged right to freedom of speech which is no greater than is essential to the furtherance of the State's governmental interests.

*The Advertisement of Sexual Devices*

¶18. The advertising done by the vendor plaintiffs is a paradigm of purely commercial speech. It is speech which does "no more than propose a commercial transaction," and which is "related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 561, 100 S. Ct. 2343, 2349, 65 L. Ed. 2d 341, 348 (1980); *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S. Ct. 1817, 1825, 48 L. Ed. 2d 346, 358 (1976). Not all commercial speech enjoys First Amendment protection. *Central Hudson*, 447 U.S. at 566, 100 S. Ct. at 2351, 65 L. Ed. 2d at 351. Only

8

commercial speech which concerns lawful activity and which is not misleading is protected by the First Amendment. *Id.* at 566, 100 S. Ct. at 2351, 65 L. Ed. 2d at 351. States may ban commercial speech which is related to illegal activity. *Id.* at 564, 100 S. Ct. at 2350, 65 L. Ed. 2d at 349.

¶19. We find that, since § 97-29-105 makes the sale of sexual devices illegal, advertising the sexual devices is not protected by the right to free speech. In other words, the advertisements would propose an illegal transaction -- i.e., an unlawful sale of sexual devices.

### CONCLUSION

¶20. Because it does not appear beyond all reasonable doubt that Miss. Code Ann. § 97-29-105 violates the clear language of the Mississippi Constitution, we affirm the chancellor's grant of summary judgment to the State.

¶21. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY AND CARLSON, JJ., CONCUR. GRAVES AND DICKINSON, JJ., CONCUR IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**