# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CA-00235-SCT

*CHARLES ARAUJO, CASSANDRA OVERTON -*
*WELCHLIN, ARTHUR BROWN, EVELYN*
*GARNER ARAUJO AND LUTAYA STEWART*

*v.*

*GOVERNOR PHIL BRYANT, JPS, MS*
*DEPARTMENT OF EDUCATION, GLADYS*
*OVERTON, ANDREW OVERTON, SR., ELLA MAE*
*JAMES, TIFFANY MINOR, THE MISSISSIPPI*
*CHARTER SCHOOLS ASSOCIATION, MIDTOWN*
*PARTNERS, INC. AND MIDTOWN PUBLIC*
*CHARTER SCHOOL*


| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2018 |
| TRIAL JUDGE: | HON. J. DEWAYNE THOMAS |
| TRIAL COURT ATTORNEYS: | WILLIAM B. BARDWELL |
| | LYDIA WRIGHT |
| | JODY E. OWENS, II |
| | KRISSY C. NOBILE |
| | KASHONDA DAY |
| | JOANNE N. SHEPHERD |
| | CYDNEY ARCHIE |
| | MICHAEL J. BENTLEY |
| | MOLLY M. WALKER |
| | R. GREGG MAYER |
| | JAMES W. SHELSON |
| | D. MICHAEL HURST, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | WILLIAM B. BARDWELL |
| | JODY E. OWENS, II |
| | CHRISTINE BISCHOFF |
| ATTORNEYS FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: KRISSY C. NOBILE |
| | JAMES W. SHELSON |
| | MICHAEL J. BENTLEY |

MOLLY M. WALKER
MICHAEL B. WALLACE
AARON R. RICE
JOANNE N. SHEPHERD

NATURE OF THE CASE: CIVIL - STATE BOARDS AND AGENCIES
DISPOSITION: AFFIRMED - 09/05/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. Under the Mississippi Charter Schools Act of 2013 (the Act), a charter school receives funds from two sources: (1) local *ad valorem* taxes paid from the school district within which the charter school is located and (2) per-pupil funds paid from the Mississippi Department of Education. Miss. Code Ann. § 37-28-55 (Supp. 2018). In chancery court, the Plaintiffs challenged both sources of funding as unconstitutional under Article 8, Sections 206 and 208, of the Mississippi Constitution. Also, one of the charter-school intervenors maintained that the Plaintiffs lacked standing to bring the suit. The chancellor held that the Plaintiffs did have standing to sue and that they did not prove that either source of funding was unconstitutional. Before this Court, the Plaintiffs have concentrated their efforts under Article 8, Section 206, of the Mississippi Constitution, alleging that a charter school's *ad valorem* funding is unconstitutional. They did not appeal the chancellor's ruling concerning per-pupil funds. Further, the Jackson Public School District (JPS) maintains that the chancellor erred in denying its motion to be dismissed from the suit.

¶2. After review, we affirm the judgment of the chancery court. We agree that the Plaintiffs do have standing to sue. We also agree with the chancery court that the Plaintiffs

did not meet their burden to demonstrate that Section 37-28-55 is unconstitutional. Last, we find that JPS's arguments concerning its motion to dismiss are waived on appeal for failure to raise the issue in a cross-appeal.

## FACTS AND PROCEDURAL HISTORY

¶3. On July 11, 2016, Charles Araujo, Evelyn S. Garner Araujo, Casandra Overton-Welchin, John Sewell, Kimberly Sewell, Lutaya Stewart and Arthur Brown (collectively, the Plaintiffs), on their own behalf as taxpayers and as next friends of their minor children, sued Governor Phil Bryant, the Mississippi Department of Education (MDE) and JPS in the Chancery Court of Hinds County. The Plaintiffs were *ad valorem* taxpayers in Jackson with minor children who attend school in JPS. The *ad valorem* taxes at issue that were paid by the Plaintiffs were designated as "Separate School District" taxes.

¶4. In their first amended complaint, the Plaintiffs maintained that the Act's funding scheme for charter schools was unconstitutional. Specifically, they challenged Section 37-28-55(2), which mandates that when a student attends

> a charter school located in the school district in which the student resides, the school district in which a charter school is located shall pay directly to the charter school an amount for each student enrolled in the charter school equal to the ad valorem tax receipts and in-lieu payments received per pupil for the support of the local school district in which the student resides.

Miss. Code Ann. § 37-28-55(2) (Supp. 2018).[1] The Plaintiffs asserted that Section 37-28-55(2) unconstitutionally diverted public funds to charter schools. They relied on the

---

[1] The Plaintiffs also challenged the constitutionality of Mississippi Code Section 37-28-55(1)(a) (Supp. 2018) in the chancery court. They only appealed the chancery court's grant of summary judgment as to Section 37-28-55(2). Therefore, we limit our review to Section 37-28-55(2).

language of Article 8, Section 206, of the Mississippi Constitution. It reads,

> There shall be a state common-school fund, to be taken from the General Fund in the State Treasury, which shall be used for the maintenance and support of the common schools. *Any county or separate school district may levy an additional tax, as prescribed by general law, to maintain its schools.* The state common-school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined by data collected through the office of the State Superintendent of Education in the manner to be prescribed by law.

Miss. Const. art. 8, § 206 (emphasis added).

¶5. As the case progressed in chancery court, Gladys Overton, Andrew Overton, Sr., Ella Mae James and Tiffany Minor—parents of children enrolled in charter schools—intervened as Defendants. The Mississippi Charter Schools Association, Midtown Partners, Inc., and Midtown Public Charter School intervened as Defendants as well. Also, JPS filed a motion to dismiss arguing that it was not a necessary party to the suit. The chancery court denied JPS's motion.

¶6. Throughout the litigation, all parties filed motions for summary judgment. The Plaintiffs filed a superseding motion for summary judgment. Governor Bryant and MDE filed a combined motion. Also, all the Intervenor-Defendants filed motions for summary judgment. In their summary-judgment motion, Midtown Partners, Inc., and Midtown Public Charter School (collectively, Midtown) raised the issue of the Plaintiffs' standing to challenge the constitutionality of the statute. In the alternative, Midtown argued that Section 37-28-55(2) was constitutional.

¶7. On February 13, 2018, the chancery court entered an order denying the Plaintiffs' superseding motion for summary judgment. The order also granted Governor Bryant and

MDE's combined motion for summary judgment and the Intervenor-defendants' motions for summary judgment. That same day, the Plaintiffs filed their notice of appeal in this Court.

**STANDARD OF REVIEW**

*Standing*

¶8. The standard of review for issues of standing is de novo. ***Davis v. City of Jackson***, 240 So. 3d 381, 383 (Miss. 2018). "The existence of subject-matter jurisdiction . . . turns on the well pleaded allegations of the complaint which are taken as true." ***SASS Muni-V, LLC v. DeSoto Cty.***, 170 So. 3d 441, 445 (Miss. 2015) (internal quotation marks omitted) (quoting ***Am. Fid. Fire Ins. Co. v. Athens Stove Works, Inc.***, 481 So. 2d 292, 296 (Miss. 1985)).

*Constitutional Challenge*

¶9. "[U]nder Mississippi law a party challenging the constitutionality of a statute must prove unconstitutionality beyond a reasonable doubt." ***Cities of Oxford, Carthage, Louisville, Starkville & Tupelo v. Ne. Miss. Elec. Power Ass'n***, 704 So. 2d 59, 65 (Miss. 1997) (citing ***Sec'y of State v. Wiesenberg***, 633 So. 2d 983, 989 (Miss. 1994)). Thus,

> one who assails a legislative enactment must overcome the strong presumption of validity and such assailant must prove his conclusions affirmatively, and clearly establish it beyond a reasonable doubt. All doubts must be resolved in favor of validity of a statute. If possible, a court should construe statutes so as to render them constitutional rather than unconstitutional if the statute under attack does not clearly and apparently conflict with organic law after first resolving all doubts in favor of validity.

***State v. Bd. of Levee Comm'rs for Yazoo-Miss. Delta***, 932 So. 2d 12, 19–20 (Miss. 2006) (quoting ***Ne. Miss. Elec. Power Ass'n***, 704 So. 2d at 65).

5

## ANALYSIS

### I.    Standing

¶10.    In their initial brief, the Plaintiffs urge us to find that the issue of standing has been waived, since Midtown did not file a notice of cross-appeal on the issue of standing. Midtown did not raise the issue on cross-appeal. Thus, the Plaintiffs argue that the issue is waived.

¶11.    For support, the Plaintiffs rely on *Hill Brothers Construction & Engineering Co. v. Mississippi Transportation Commission*, 909 So. 2d 58, 60 (Miss. 2005). They argue that the *Hill Brothers* Court found that a party had waived its right to challenge standing by not raising the issue in a notice of cross-appeal. In *Hill Brothers*, the Court did recognize that a party had not filed a cross-appeal "but raised 'standing' in its appellate brief." *Hill Bros.*, 909 So. 2d at 60. The Court also concluded, "As this issue is not properly before the Court, we decline to address this issue on the merits." *Id.* This conclusion, though, did not mean that the issue of standing had been waived. Instead, the *Hill Brothers* Court simply recognized that standing had not been properly raised before the Court and declined to address the issue on the merits. *Id.*

¶12.    Further, it is well established that standing is a jurisdictional issue that may be raised by the parties or the Court at any time. *City of Madison v. Bryan*, 763 So. 2d 162, 166 (Miss. 2000); *Davis*, 240 So. 3d at 383. Thus, Midtown did not waive its standing challenge.

¶13.    Turning to the merits of Midtown's claim that standing has been waived, we recently reviewed Mississippi's law on standing:

It is well settled that Mississippi's standing requirements are quite liberal. This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language. Therefore, this Court has been more permissive in granting standing to parties who seek review of governmental actions. In Mississippi, parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.

*Davis*, 240 So. 3d at 384 (quoting *Burgess v. City of Gulfport*, 814 So. 2d 149, 152–53 (Miss. 2002)).

¶14.    "An interest is deemed colorable if it 'appear[s] to be true, valid, or right.'" *SASS Muni-V*, 170 So. 3d at 446 (alteration in original) (quoting *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 827 n.13 (Miss. 2009)). "[A]n individual's legal interest or entitlement to assert a claim against a defendant must be grounded in some legal right recognized by law, whether by statute or by common law." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 525 (Miss. 2005)). "[F]or a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Hall v. City of Ridgeland*, 37 So. 3d 25, 33–34 (Miss. 2010)).

¶15.    After our review, we agree with the chancery court that the Plaintiffs have standing to sue. The Plaintiffs challenge the alleged unconstitutional spending of their *ad valorem* property taxes by governmental entities. "[T]his Court has been 'more permissive in granting

7

standing to parties who seek review of governmental actions'" than federal courts. *State v. Quitman Cty.*, 807 So. 2d 401, 405 (Miss. 2001) (quoting *Van Slyke v. Bd. of Trs. of State Insts. of Higher Learning*, 613 So. 2d 872, 875 (Miss. 1993) (*Van Slyke II*)). The Plaintiffs own property in the school district, pay property taxes (a portion of which are designated to support JPS) and have children who attend JPS. The Plaintiffs have also brought suit on behalf of their children as next friends of their children. Thus, the Plaintiffs are not simply general taxpayers challenging general governmental spending as unconstitutional. Instead, the Plaintiffs are *ad valorem* taxpayers alleging that governmental entities are spending *ad valorem* tax revenue in direct violation of Article 8, Section 206, of the Mississippi Constitution. Further, JPS's compliance with Section 37-28-55 diverts *ad valorem* funds from JPS public schools—where the Plaintiffs' children are enrolled—to the charter schools. Thus, the Plaintiffs experience a different, adverse effect than the general public due to the alleged unconstitutional spending of the *ad valorem* taxes.

¶16. Further, "[c]onstitutional litigation by private citizens may be maintained in cases where there is no probability of the statute being challenged by one of the class discriminated against." *Van Slyke II*, 613 So. 2d at 875 (quoting *Bd. of Trs. of State Insts. of Higher Learning v. Van Slyke*, 510 So. 2d 490, 497 (Miss. 1987) (*Van Slyke I*) (Prather, J., dissenting)). Here, JPS, a party that would unquestionably have standing to challenge Section 37-28-55, has not done so. Rather, it filed a motion to dismiss and informed the circuit court that it did not have an opinion as to the constitutionality of Section 37-28-55. *See Hotboxxx, LLC v. City of Gulfport*, 154 So. 3d 21, 28 (Miss. 2015) (finding a lack of

standing when "a party with an interest in land affected by the ordinance's zoning regulations would have standing to sue"). At the time of the filing, the only charter schools in Mississippi were located within JPS's geographic borders.[2]

¶17. The Plaintiffs claim to have suffered an adverse effect from Section 37-28-55(2) that is different from the adverse effect suffered by the general public. Thus, we find that the Plaintiffs have standing.

## II. Constitutional Challenge

¶18. Turning now to the constitutional challenge, the Plaintiffs maintain that the funding provisions of Section 37-28-55(2) violate Article 8, Section 206, of the Mississippi Constitution. They allege that Section 37-28-55(2)'s requirement that a school district pay a charter school an amount equal to the *ad valorem* tax receipts received per pupil for the support of the local school district is unconstitutional under Article 8, Section 206. The Plaintiffs argue that Article 8, Section 206, authorizes a school district to maintain only "its schools." Because the Plaintiffs contend that a charter school is its own, separate school district, they argue that Section 37-28-55(2) violates Article 8, Section 206, by requiring a school district to maintain a school that is not one of "its schools."

¶19. We "may strike down an act of the legislature 'only where it appears beyond all reasonable doubt' that the statute violates the clear language of the constitution." ***PHE, Inc. v. State***, 877 So. 2d 1244, 1247 (Miss. 2004) (quoting ***James v. State***, 731 So. 2d 1135, 1136

---

[2] Since the filing of the suit, Clarksdale Collegiate was founded within the geographic boundaries of the Clarksdale Municipal School District. This fact, though, does not affect the Plaintiffs' standing.

9

(Miss. 1999)); *Clark v. Bryant*, 253 So. 3d 297, 301 (Miss. 2018). "In other words, 'to state that there is doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid.'" *Tunica Cty. v. Town of Tunica*, 227 So. 3d 1007, 1016 (Miss. 2017) (quoting *Moore v. Bd. of Supervisors of Hinds Cty.*, 658 So. 2d 883, 887 (Miss. 1995)).

¶20. Article 8, Section 201, of the Mississippi Constitution reads, "The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." Miss. Const. art. 8, § 201. Further, Article 8, Section 206, reads, in part, that "[a]ny county or separate school district may levy an additional tax, as prescribed by general law, to maintain its schools." Miss. Const. art. 8, § 206. In relevant part, Section 37-28-55(2) provides,

> (2) For students attending a charter school located in the school district in which the student resides, the school district in which a charter school is located shall pay directly to the charter school an amount for each student enrolled in the charter school equal to the ad valorem tax receipts and in-lieu payments received per pupil for the support of the local school district in which the student resides. . . . The amount must be paid by the school district to the charter school before January 16 of the current fiscal year. If the local school district does not pay the required amount to the charter school before January 16, the State Department of Education shall reduce the local school district's January transfer of Mississippi Adequate Education Program funds by the amount owed to the charter school and shall redirect that amount to the charter school.

Miss. Code. Ann. § 37-28-55(2) (Supp. 2018).

¶21. At the outset of our analysis, we note our disagreement with the dissent's narrow interpretation of the phrase "its schools" in Article 8, Section 206. Miss. Const. art. 8, § 206. While "its" is a possessive-case pronoun that refers to the antecedent "county or separate

10

school district," the dissent's interpretation unnecessarily restricts the meaning of "its" in Article 8, Section 206.  First, possessive-case pronouns convey more than mere possession. Bryan A. Garner, The Redbook: A Manual on Legal Style § 10.17, at 186 (3d ed. 2013) ("Use the possessive case of a pronoun to show ownership, attribution, measure, or some similar relationship.").  Second, "its" is defined as "[b]elonging to or associated with a thing previously mentioned or easily identified."[3]  *Its*, Lexico.com, https://www.lexico.com/en/definition/its (last visited Aug. 8, 2019) (Lexico.com is a collaboration between Dictionary.com and the Oxford University Press).

¶22.  Within the context of the broad grant of authority given to the Legislature under Article 8, Section 201, and given the plain definition of the word "its," the phrase "its schools" conveys a broader meaning than simple possession or ownership of the schools by the school district.  *See **Dye v. State ex rel. Hale***, 507 So. 2d 332, 342 (Miss. 1987) (citing ***St. Louis & San Francisco Ry. Co. v. Benton Cty.***, 132 Miss. 325, 330, 96 So. 689, 690 (1923)) ("[C]onstitutional provisions should be read so that each is given maximum effect and a meaning in harmony with that of each other.")  The phrase "its schools" in Article 8, Section 206, includes the schools that belong to the school district and are in association with the school district.[4]

---

[3] This grammatical construction is common.  For instance, Mississippi is known worldwide for its blues music.  Mississippi does not possess, control or own its blues music. Blues music, though, is associated with Mississippi and belongs, to an extent, to Mississippi. Similar to our interpretation of Article 8, Section 206, Mississippi's blues music (or "its blues music") refers to music within a geographical boundary.

[4] The dissent maintains that we "parse[]" the interpretation of "its" "to a degree that defies common sense."  Diss. Op. ¶ 52 n.7.  On the contrary, we simply recognize that the

¶23. Turning to the constitutional challenge to Section 37-28-55(2), we note that it is an issue of first impression. As such, we will discuss the framework of the Act as it relates to the resolution of the issue on appeal.

¶24. The Act provides that all charter schools in the state "are public schools and are part of the state's public education system." Miss. Code Ann. § 37-28-3(2) (Rev. 2013). A "[c]harter school" is "a public school that is established and operating under the terms of [the] charter contract between the school's governing board and the authorizer." Miss. Code Ann. § 37-28-5(e) (Rev. 2013). The Act also defines a "[n]oncharter public school" as "a public school that is under the direct management, governance and control of a school board or the state." Miss. Code Ann. 37-28-5(i) (Rev. 2013). Last, the Act defines a "[s]chool district" as "a governmental entity that establishes and supervises one or more public schools within its geographical limits pursuant to state statutes." Miss. Code Ann. § 37-28-5(l) (Rev. 2013).

¶25. The Act establishes a state agency: the Mississippi Charter School Authorizer Board. Miss. Code Ann. § 37-28-7 (Supp. 2018). The Authorizer Board "may authorize charter schools within the geographical boundaries of any school district." Miss. Code Ann. § 37-

---

phrase "its schools"—within Article 8, Section 206—has a broader potential interpretation than simple possession. Further, while the interpretations of the statutory sections on which the dissent relies for this point are not at issue, other provisions in the Act speak to the dissent's concerns of an overly broad interpretation of "its" in those sections. *See* Miss. Code Ann. § 37-28-29 (Supp. 2018) (graduation requirements), Miss. Code Ann. § 37-28-39(6) (Rev. 2013) (local education agency).

Also, as an aside, the Plaintiffs and the dissent argue that the historical background of the adoption of Article 8, Section 206, supports their narrow interpretation of the phrase "its schools." We find, however, that nothing in the historical background of the section conflicts with our broader interpretation of Article 8, Section 206.

28-7(2)(a) (Supp. 2018).

¶26.    Charter schools are required to be open to "[a]ny student residing in the geographical boundaries of the school district in which the charter school is located" and to any student who resides in a school district that was rated "C," "D" or "F" at the time the charter school was authorized or at the time the student enrolls in the charter school.  Miss. Code. Ann. § 37-28-23(1)(a)–(b) (Supp. 2018).  Further, "the underserved student composition of a charter school's enrollment collectively must reflect that of students of all ages attending the school district in which the charter school is located."  Miss. Code Ann. § 37-28-23(5) (Supp. 2018).  Also, under the Act, a school district must publicize a charter school "as an enrollment option within the district to the same extent" that the district publicizes its noncharter public schools.  Miss. Code Ann. § 37-28-27 (Rev. 2013).  In addition, should a charter school close, all of its "unspent government funds . . . must revert to the local school district in which the charter school is located."  Miss. Code. Ann. § 37-28-35(2) (Rev. 2013).

¶27.    Last, the Act details that a charter school "must function as a local educational agency."  Miss. Code Ann. § 37-28-39(6) (Rev. 2013).  "Status as a local educational agency, however, does not preclude a charter school from developing, by mutual agreement or formal contract, links with the local school district for services, resources and programs."  Miss. Code Ann. § 37-28-23(6) (Supp. 2018).  Although a charter school is "geographically located within the boundaries of a particular school district and enrolls students who reside within the school district, . . . [it] may not be considered a school within that district under the purview of the school district's school board."  Miss. Code Ann. § 37-28-45(3) (Rev. 2013).

Thus,

> [t]he rules, regulations, policies and procedures established by the school board for the noncharter public schools that are in the school district in which the charter school is geographically located do not apply to the charter school unless otherwise required under the charter contract or any contract entered into between the charter school governing board and the local school board.

Miss. Code Ann. § 37-28-45(3).

¶28. In light of the Act's provisions, it is evident that the Plaintiffs did not prove that Section 37-28-55(2) is unconstitutional beyond a reasonable doubt. Article 8, Section 201, requires the Legislature to "provide for the establishment, maintenance and support of free public schools. . . ." Miss. Const. art. 8, § 201. In addition, Article 8, Section 206, authorizes "[a]ny county or separate school district" to "levy an additional tax, as prescribed by general law, to maintain its schools." Miss. Const. art. 8, § 206. Charter schools are public schools, and the Act does not establish a charter school as its own school district—separate from the school district within which it is located. Thus, Section 37-28-55(2) does not violate the plain language of Article 8, Section 206. In other words, charter schools are not established as a separate school district and remain a public school of the local school district for the purposes of Article 8, Section 206.[5]

¶29. The Act indicates that a charter school is not a separate school district. The Authorizer Board authorizes charter schools within preexisting school districts. Miss. Code Ann. § 37-28-7(2)(a). Further, a charter school is required to enroll students who reside in

---

[5] Even if we were to agree with the Plaintiffs that charter schools are not a public school of the local school district, nothing in Section 37-28-55(2) violates a school district's constitutional right to levy taxes to maintain its schools under Article 8, Section 206.

14

the geographic boundaries of the school district within which the school resides, and a charter school's underserved student composition enrollment "must reflect that of students of all ages attending the school district in which the charter school is located." Miss. Code Ann. § 37-28-23(1)(a)–(b), (5) (Supp. 2018). Another indication that a charter school is not a separate school district is that school districts, if they publicize their schools, must publicize a charter school as an "as an enrollment option *within the district*." Miss. Code Ann. § 37-28-27 (Rev. 2013) (emphasis added). Also, if a charter school closes, all of its government funds—not just *ad valorem* funds—revert to the school district in which it was located. Miss. Code. Ann. § 37-28-35(2).

¶30. The Plaintiffs argue that a school district's lack of supervisory control over a charter school under the Act is an indication of the Legislature's intent to establish charter schools as separate school districts. While it is true that a charter school is exempted from the oversight of a school district, this does not mean that a charter school is a separate, geographic school district. *See* Miss. Code Ann. § 37-28-39(6) (Rev. 2013). Although a charter school that is "geographically located within the boundaries of a particular school district . . . may not be considered a school within that district under the purview of the school district's school board," the Act does not preclude its being considered within the district for other purposes. Miss. Code Ann. § 37-28-45(3). The fact that a charter school "may not be considered a school within that district under the purview of the school district's school board" implies that it may be considered (or, perhaps, is considered) a school within the district for other purposes (such as being maintained by the school district under Article

15

8, Section 206). This doubt—if it is, in fact, doubt—does not prohibit a finding that Section 37-28-55(2) is constitutional, since the Plaintiffs did not prove unconstitutionality beyond a reasonable doubt. Again, "to state that there is doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid." *Moore*, 658 So. 2d at 887 (citing *Ivy v. Robertson*, 220 Miss. 364, 370, 70 So. 2d 862, 865 (1954)).

¶31. The Plaintiffs' position that the Act establishes a charter school as a separate district is difficult to accept, since the Act does not define the new the geographic boundaries of the "district." The Act did not define any new boundaries for a charter school's new "district." It did not even state that the boundaries of the preexisting school district were the boundaries of a charter school's new "district." This analysis becomes more complicated when considering multiple charter schools governed by one charter or conversion charter schools (noncharter public schools that convert to charter schools). *See* Miss. Code Ann. § 37-28-39(4) (Rev. 2013) ("To the extent approved by the authorizer, a charter contract may consist of one or more schools. Each charter school that is part of a charter contract must be separate and distinct from any other charter school."); Miss. Code Ann. § 37-28-5(f) (Rev. 2013) ("'Conversion charter school' means a charter school that existed as a noncharter public school before becoming a charter school."). As discussed above, the charter school's existence is tied inherently to the geographic boundaries of the school district within which it resides. The Act exempts the charter school from the control of the school district but did not establish a charter school as a separate geographic district.

¶32. Another indication that the Legislature did not intend for a charter school to be its own

school district is that the Act did not authorize the charter school to communicate with the levying authority or otherwise to levy its own taxes for its support. *Cf.* Miss. Code. Ann. § 37-57-104(1) (Rev. 2014) ("Each school board shall submit to the levying authority for the school district a certified copy of an order adopted by the school board requesting an ad valorem tax effort in dollars for the support of the school district."). Thus, if the Court were to conclude that a charter school was its own school district without a set geographic boundary, a charter school would have the inherent, constitutional authority to levy taxes under Article 8, Section 206, but it would have no real property within its "district" to tax and no means to levy taxes. The Act simply did not intend for a charter school to be a separate school district.

¶33. The Plaintiffs rely on *Pascagoula School District v. Tucker*, 91 So. 3d 598 (Miss. 2012), but *Tucker* is distinguishable. In *Tucker*, the Legislature mandated that the revenue that the Pascagoula School District (PSD) collected from *ad valorem* taxes levied on liquified natural-gas terminals and crude-oil refineries be distributed to all of the school districts in Jackson County in which the terminals and refineries were located. *Tucker*, 91 So. 3d at 600. Jackson County had four school districts. *Id.* Thus, the PSD received its tax money from the City of Pascagoula but was required by the Legislature to disburse a portion of it to the other three school districts in Jackson County. *Id.* In its analysis, the *Tucker* Court held,

> The plain language of [Article 8,]Section 206[, of the Mississippi Constitution] grants the PSD the authority to levy an ad valorem tax and mandates that the revenue collected be used to maintain only its schools. Conversely, no such authority is given for the PSD to levy an ad valorem tax to maintain schools

17

outside its district.

*Id.* at 604.

¶34.   This appeal, though, is distinguishable from *Tucker*.   Once JPS received its *ad valorem* taxes, the taxes did not leave the district but instead were used to maintain "its schools."   Here, JPS set its budget and requested an amount of tax money from the levying authority.   Miss. Code Ann. § 37-57-104(1).   In turn, the levying authority assessed the taxes and disbursed the funds to JPS.   Miss. Code Ann. § 37-57-1(1)(a) (Rev. 2014).   At that point, the *ad valorem* assessment was within the district.   Under Section 37-28-55(2), JPS then disbursed an amount of the assessment "for each student enrolled in [its] charter school[s] equal to the ad valorem tax receipts and in-lieu payments received per pupil."   Miss. Code Ann. § 37-28-55(2).

¶35.   In other words, the *ad valorem* assessment went to JPS, remained in the school district and maintained the district's schools.   Further, the charter schools are public schools supported by their school district.   As discussed above, they are public schools within the school district (not constituting a separate school district) and are intrinsically connected to the district.

¶36.   We agree with the dissent that this case does not involve a policy debate concerning charter schools in Mississippi, but, with respect, the sole issue before the Court is whether the Plaintiffs demonstrated "'beyond all reasonable doubt'" that Section 37-28-55 "violates the clear language of" Article 8, Section 206.   *PHE*, 877 So. 2d at 1247 (quoting *James*, 731 So. 2d at 1136).   Today, we do not "rubber stamp" the constitutionality of Section 37-28-55.

18

Diss. Op. ¶ 50. Instead, in light of the "strong presumption that a legislative enactment is valid and constitutional," we find that the Plaintiffs failed to demonstrate that Section 37-28-55 is unconstitutional. *In re D.D.H.*, 268 So. 3d 449, 457 (Miss. 2018) (citing *State ex rel. Hood v. Louisville Tire Ctr., Inc.*, 55 So. 3d 1068, 1072 (Miss. 2011)).

### III. Denial of the Motion to Dismiss

¶37. JPS argues that the chancery court erred by denying its motion to dismiss. The Plaintiffs argue that JPS waived this issue when it failed to file a notice of cross-appeal. We agree.

¶38. JPS waived its right to a direct appeal by not filing a notice of cross-appeal. M.R.A.P. 3; M.R.A.P. 4(c). "Failure to file a notice of cross-appeal is usually considered fatal to a cross-appellant's issues." *Ivison v. Ivison*, 762 So. 2d 329, 337 (Miss. 2000) (citing *Lindsey v. Lindsey*, 612 So. 2d 376, 378 (Miss. 1992)). JPS concedes that it is not a cross-appellant; its brief is entitled, "Brief of Appellee." JPS's appellee status, though, is insufficient for the Court to review the chancery court's denial of JPS's motion to dismiss, and we decline to review it.

### CONCLUSION

¶39. While the Plaintiffs have standing to challenge Section 37-28-55(2), they did not meet their heavy burden to overcome the presumption of constitutionality in favor of Section 37-28-55(2). Further, JPS waived any argument concerning its motion to dismiss by failing to cross-appeal. Thus, we affirm the chancery court's grant of summary judgment.

¶40. **AFFIRMED.**

19

**RANDOLPH, C.J., MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION. KING, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J.**

**COLEMAN, JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶41.    An amendment to Article 8, Section 206, of the Mississippi Constitution that provides that a county or local school district's power to tax must be "prescribed by general law" grants power to the Legislature over the levy of taxes by the school districts. Therefore, the debate over whether charter schools are part of the school district in which they are located for purposes of whether the funding statute is constitutional is a red herring. Either way, the Legislature acted well within its constitutional bounds when it enacted Mississippi Code Section 37-28-55(2) (Supp. 2018).

¶42.    Article 8, Section 206, has an ignominious beginning as a provision governing, *inter alia*, the use of proceeds from a poll tax to fund public schools. The original version read as follows:

> There shall be a common school fund, which shall consist of poll tax (to be retained in the counties where the same is collected) and an additional sum from the general fund in the state treasury which together shall be sufficient to maintain the common schools for the term of four months in each scholastic year. But any county or separate school district may levy an additional tax to maintain its schools for a longer time than the term of four months. The common school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined from data collected through the office of the state superintendent of education, in the manner to be prescribed by law.

*Jackson v. Hinds Cty.*, 104 Miss. 199, 203-04, 61 So. 175, 175 (1913) (quoting Miss. Const. art. 8, § 206). In 1904, the language of Article 8, Section 206, was amended to read as

20

follows:

> There shall be county common school fund, which shall consist of the poll tax, to be retained in the counties where the same is collected, and a state common school fund, to be taken from the general fund in the state treasury, which together shall be sufficient to maintain the common schools for the term of four months in each scholastic year. But any county or separate school district may levy an additional tax to maintain its schools for a longer time than the term of four months. The state common school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined from data collected through the office of the state superintendent of education in the manner to be prescribed by law.

*Jackson*, 61 So. at 175 (quoting Miss. Const. art 8, § 206 (1904)). Although subtle, one notes a distinction between the two versions. The former version merely provided that "there shall be a common school fund which shall consist of the poll tax (to be retained by the county) . . . ." *Id.* at 176 (internal quotation marks omitted) (quoting Miss. Const. art 8 § 206 (1890)). The latter was amended to state that "[t]here shall be a *county common school fund*, which shall consist of the poll tax, which shall be retained in the counties where collected, and a *state common school fund*." *Id.* (internal quotation marks omitted) (quoting Miss. Const. art. 8 § 206 (1904)). Accordingly, the former version initially provided a common school fund, while the 1904 version added a county common school fund and a state common school fund. *Id.* at 175-76. The recognition of two distinct school funds was made to alter the distribution of funds. *Id.* at 176.

¶43.    In 1922, the Court revisited Article 8, Section 206, in *Miller v. State*, 130 Miss. 564, 94 So. 706 (1922). In *Miller*, the court referenced a 1919 amendment of Article 8, Section 206, which provided, "But the Legislature shall have power to make an additional

21

appropriation to be disbursed by the State Board of Education in such manner as to equalize public school terms throughout the state." *Miller*, 94 So. at 707 (quoting Miss. Const. art 8, § 206 (1919)). The 1919 amendment to Article 8, Section 206, became part of the Mississippi Constitution in 1920. *Id.* However, it was later determined that the 1919 amendment—which was part of the initiative and referendum law—was null and void along with the rest of the initiative and referendum law. *Id.* As a result, the Court reverted back to the 1904 language of Article 8, Section 206, in its interpretation and analysis of the law in *Miller*. *Id.* at 708.

¶44. A year after *Miller*, the Court again addressed Article 8, Section 206, in *St. Louis & San Francisco Railway Co. v. Benton County*, 132 Miss. 325, 96 So. 689 (1923). There, the plaintiff sought a refund of school tax assessed against it by the Benton County Board of Supervisors. *Id.* At issue was the constitutionality of a statute that allowed boards of supervisors to levy taxes for public schools on property in the county, to levy additional poll taxes, and to take other measures to fund schools. *Id.* While the text of Article 8, Section 206, has been amended to such an extent that the *Benton County* Court's exposition of it does not help in applying today's version of the section to today's case, the *Benton County* Court did rely on a principle of state law that remains in force today. The Mississippi Legislature has "all power not taken from it by the Constitution in express terms or by necessary implication." *Id.* at 690 (citing *Miller v. State*, 130 Miss. 564, 94 So. 706 (1923)).

¶45. Following the cases discussed above, there was no significant alteration to the language in Article 8, Section 206, until 1989. Then, the amendment to Article 8, Section

206, was proposed by Mississippi House Concurrent Resolution 9 (1989 Miss. Laws ch. 589) and, upon ratification by the electorate on June 20, 1989, was inserted as part of the Constitution by proclamation of the Secretary of State on August 1, 1989. In doing so, the single fund was reinstated, and the references to poll taxes were eliminated. Article 8, Section 206, in its current form reads as follows:

> There shall be a state common-school fund, to be taken from the General Fund in the State Treasury, which shall be used for the maintenance and support of the common schools. Any county or separate school district may levy an additional tax, as prescribed by general law, to maintain its schools. The state common-school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined by data collected through the office of the State Superintendent of Education in the manner to be prescribed by law.

Miss. Const. art. 8, § 206

¶46. New to Article 8, Section 206, as a result of the latest amendment is the requirement that any county or separate school district that levies an additional tax must do so "as prescribed by general law." Miss. Const. art. 8, § 206. To prescribe means "[t]o dictate, ordain, or direct; to establish authoritatively (as a rule or guideline)." *Prescribe*, Black's Law Dictionary (11th ed. 2019). In other words, the power of local school districts to levy taxes is dictated by general law which, of course, is established by the Legislature. In the context of our jurisdiction, we have held that the addition of the requirement that jurisdiction be set by the Constitution itself or by general law resulted in the Legislature's having "plenary power" on the subject of the Court's jurisdiction. *Dialysis Sols., LLC. v. Miss. Dep't of Health*, 96 So. 3d 713, 717 (¶ 8) (Miss. 2012) (quoting *Drummond v. State*, 184 Miss. 738, 185 So. 207, 208 (1938)).

¶47.  Just as the Court found no constitutional prohibition against the Legislature's enactment of a statute in **Benton County**, 96 So. at 690, I can discern no constitutional limit on the Legislature's passing Section 37-28-55(2), even if the plaintiffs and Presiding Justice King are correct that the charter schools are not the district's schools.  The school districts may still levy taxes, and the levied taxes go to support the district's schools.  Nothing either express or implied in the Constitution limits the Legislature's expansive authority to prescribe, as a condition of such levying of taxes, that part of the proceeds must be used to support charter schools that operate within the geographical boundaries of the district yet exist under a separate administrative governance system.

¶48.  "A state Legislature's power to make laws is absolute unless restricted by constitutional limitations."  **Martin v. First Nat'l Bank**, 176 Miss. 338, 164 So. 896, 901 (1936).  It is the broad authority of the State Legislature to make laws absent constitutional limitation that gives rise to the Legislature's authority to pass Section 37-28-55(2), not a broad definition of "as prescribed by general law" as Presiding Justice King suggests.  Diss. Op. ¶ 52 n.6.  Like the provision at issue in **Benton County**, the Article 8, Section 206, grant of authority to local school districts to levy taxes is just that—a positive grant of authority to the Legislature to allow school districts to levy taxes.  It is not a negative limitation on the Legislature's authority to prescribe conditions as it sets the general law governing such taxation.  The conclusion becomes even more evident in light of the broad description of the Legislature's authority over public education found in Article 8, Section 201.  "The Legislature shall, by general law, provide for the establishment, maintenance and support of

free public schools *upon such conditions* and limitations as the Legislature may prescribe."

Miss. Const. art. 8, § 201 (emphasis added).

¶49. Because I fully concur in the majority's treatment of the standing issue and the motion to dismiss, I, with respect, concur in part and in result.

**KING, PRESIDING JUSTICE, DISSENTING:**

¶50. Because the majority's interpretation of Mississippi Constitution Article 8, Section 206, belies its plain language, clear grammar rules, and common sense, and because the funding mechanism for charter schools mandated by Mississippi Code Section 37-28-55(2) violates Article 8, Section 206, of the Mississippi Constitution, I respectfully dissent. This Court should not be a rubber stamp for Legislative policies it agrees with when those policies are unconstitutional. Where, as here, the implementation, or a portion thereof, of a constitutional policy (charter schools) is done in an unconstitutional manner (requiring that districts share their ad valorem tax revenue), this Court should not seek a way to rubber stamp the implementation simply because it agrees with the original policy.

¶51. At the outset, I emphasize that this case does not and should not involve a policy debate regarding the wisdom or constitutionality of charter schools' existence in Mississippi. The Legislature clearly has the authority under Article 8, Section 201, of the Mississippi Constitution to establish charter schools, and it clearly has the authority to fund them with State funds. The sole issue before this Court is whether the Legislature has the authority to require local school districts to fund charter schools using their ad valorem tax receipts. The majority concludes that it may; but its analysis is backwards, and thus is flawed from the

25

outset. Instead of looking directly to the constitutional language of Article 8, Section 206, at issue to determine whether charter schools are included in a district's schools, the majority analyzes whether each charter school is its own school district, an analysis that has no bearing on the meaning of the phrase "its schools." Miss. Const. art. 8, § 206 (" Any county or separate school district may levy an additional tax, as prescribed by general law, to maintain *its schools* . . . ." (emphasis added)). We need not conclude that a charter school is a separate school district to determine that it does not fall within the purview of the phrase "its schools." But we should first look directly at the plain language of Article 8, Section 206, to determine the meaning of the phrase "its schools."

### 1.    *Plain Language of Article 8, Section 206*

¶52.    "Any county or separate school district may levy an additional tax, as prescribed by general law, to maintain *its schools.*"[6] Miss. Const. art. 8, § 206 (emphasis added). "Its" is a possessive pronoun that modifies and qualifies the noun "schools." William Strunk, Jr. & E.B. White, *The Elements of Style*, at 12 (4th ed. 2014); *The Chicago Manual of Style* ¶ 5.49 (17th ed. 2017). "The possessive case of pronouns is used to show ownership." Strunk & White, *supra*, at 12. Possessive pronouns are "used as *limiting* adjectives to *qualify* nouns." *The Chicago Manual of Style*, *supra*, ¶ 5.49 (emphases added). "Possessive" is defined as

---

[6]Justice Coleman's opinion gives broad meaning to the phrase "as prescribed by general law," arguing that this phrase allows the Legislature to distribute ad valorem taxes as it sees fit. This Court has explicitly rejected that notion, finding that "as prescribed by general law" "means that the Legislature is to establish, through general law, the *method* by which a 'county or separate school district may levy an additional tax.' . . . The Legislature has no authority to mandate how the funds are *distributed*, as Section 206 clearly states that the purpose of the tax is to maintain the levying school district's schools." ***Pascagoula Sch. Dist. v. Tucker***, 91 So. 3d 598, 605 (Miss. 2012).

26

"[t]he case of nouns that indicates ownership or possession[.]" Strunk & White, *supra*, at 93.

"Possess" means "[t]o have in one's actual control; to have possession of." *Possess*, Black's

Law Dictionary (11th ed. 2019). It is also defined as "to have as property; own." *Possess*,

American Heritage College Dictionary (3rd ed. 1997). Thus, basic grammatical rules lead

to the necessary conclusion that "its schools" in Article 8, Section 206, refers to schools that

the county or school district possesses, controls, and/or owns.[7]

¶53. The legislative history of Article 8, Section 206, also supports the notion that we

should use basic and simple grammar rules to interpret "its schools" as referring to schools

that the district controls, and indicates that the district's control over the schools it funds with

ad valorem tax receipts is essential to Article 8, Section 206. The Committee on Education

at the 1890 Constitutional Convention proposed a section, the precursor to Article 8, Section

---

[7]The majority admits that "its" conveys ownership, attribution, or a like relationship. The statutory law bans any ownership or attribution of charter schools by the school district in which they are located, and further bans nearly any substantial relationship between the two unless mutually agreed upon. But the majority then takes the word "its" out of the context in which it is actually used and parses it to a degree that defies common sense. School boards may be relieved to learn that, under the majority's definition of "its," they, and not the charter school board, must establish the standards for charter school graduation. Miss. Code Ann. § 37-16-7 (Rev. 2013) ("Each district school board shall establish standards for graduation from *its schools*. . . .") (emphasis added). Additionally, charter schools may be surprised to find out that, under the majority's interpretation of "its" in relation to students and schools of a district, that they are now required to certify student enrollment for the entire district, since charter schools must serve the entire district and "its" refers to geographical location. Miss. Code Ann. § 37-28-53(1) (Rev. 2013) ("Each charter school shall certify annually to the State Department of Education *its* student enrollment, average daily attendance and student participation in the national school lunch program, special education, vocational education, gifted education, alternative school program and federal programs in the same manner as school districts.") (emphasis added). Even giving "its" the broader definition suggested by the majority, "its" at the very least indicates a relationship. The statutes make clear that no relationship exists between charter schools and the local school district. They are completely separate entities.

27

206, that stated that "any town, city, county or school district may levy additional taxes for school purposes . . . ." Journal of the Proceedings of the Constitutional Convention of the State of Mississippi (1890). A minority of the committee objected to the language "for school purposes," arguing that "[t]he proposition, as we understand it, is to require those districts [the separate school districts] not only to support their own schools (or else abandon them), but also to aid largely in the support of the county schools, over whose management they have no control." *Id.* An amendment was suggested that instead used the term "maintain their schools." *Id.* A later amendment changed the language to "maintain its schools," and "its schools" is the language that the Convention ultimately adopted. *Id.* Thus, it appears that the drafters chose the language "its schools" to clarify that ad valorem tax receipts only supported the maintenance of schools over which the school district exercised control.

¶54. A school district clearly does not possess, control, or own charter schools. Charter schools are unaccountable to the district in which they are geographically located, and the Charter School Act directly contradicts any notion that a charter school is included in a district's schools. The Charter School Act defines a "school district" as "a governmental entity that *establishes and supervises* one or more public schools within its geographical limits pursuant to state statutes." Miss. Code Ann. § 37-28-5(l) (Rev. 2013) (emphasis added). A school district neither establishes nor supervises charter schools. Miss. Code Ann. § 37-28-5(e) (Rev. 2013) ("'Charter school' means a public school that is established and operating under the terms of charter contract between the school's governing board and the

28

authorizer."). Thus, by the Charter School Act's very definition, a charter school is not included in the school district in which it is geographically located. The Charter School Act further provides that

> Although a charter school is geographically located within the boundaries of a particular school district and enrolls students who reside within the school district, the charter school may not be considered a school within that district under the purview of the school district's school board. The rules, regulations, policies and procedures established by the school board for the noncharter public schools that are in the school district in which the charter school is geographically located do not apply to the charter school unless otherwise required under the charter contract or any contract entered into between the charter school governing board and the local school board.

Miss. Code Ann. § 37-28-45(3) (Rev. 2013); *see also* Miss. Code Ann. § 37-28-45(4) (Rev. 2013). The Charter School Act does provide that nothing precludes a charter school "from developing, by *mutual agreement* or formal contract, *links* with the local school district for services, resources and programs." Miss. Code Ann. § 37-28-39(6) (Rev. 2013) (emphases added). Clearly, a school of the school district does not need a mutual agreement to establish a mere link to the school district; indeed, the use of the word "link" recognizes that charter schools are not even "linked" to the school district unless by agreement, much less possessed, controlled, owned, or are otherwise any part of the school district.

¶55. The phrase "its schools" in Article 8, Section 206, clearly mandates that ad valorem tax revenue be used only for schools that the school district controls. It is abundantly clear that the school district has no control whatsoever over charter schools; as such, charter schools cannot fall within the purview of "its schools." The Legislature's command in Section 37-28-55(2) that school districts distribute a portion of their ad valorem tax receipts

to schools not controlled by them, and thus schools not of the school district, directly violates Article 8, Section 206. If Article 8, Section 206, meant for the ad valorem tax receipts to follow the student, and not to maintain the schools controlled by the school district, the drafters easily could have made that clear. Instead, they made clear by the plain language of Article 8, Section 206 that ad valorem tax revenue receipts are to be used only to maintain the schools controlled by a school district.

### 2. *Other Concerns*

¶56. While the plain language of Article 8, Section 206, is abundantly clear, it is also noteworthy that statutory language used throughout Title 37 of the Mississippi Code indicates an understanding that "its schools" refers to schools that the district controls. For example, "[t]he school boards of all school districts *shall* have the following powers, authority and duties . . . : (a) To organize and operate the *schools of the district* . . ." Miss. Code Ann. § 37-7-301(a) (Rev. 2013) (emphases added). The Legislature *mandates* that a school board organize and operate the schools of the district. Yet, the school board is *prohibited* from organizing and operating charter schools. Thus, a charter school is necessarily not a school of the district. Moreover, the other many enumerated powers and duties of the school boards are inconsistent with including charter schools in the Article 8, Section 206, definition of "its schools."

¶57. Moreover, defying the plain language of Article 8, Section 206, and tying the phrase "its schools" to simple geography creates a problematic slippery slope leading to local districts being forced to support other special schools that service students within its district.

For example, the Columbus School District could be ordered to pay its ad valorem tax receipts to the Mississippi School for Math and Science for every student who attends MSMS and also resides within the Columbus School District. Tying a possessive pronoun to simple geography, rather than actual possession, simply makes no sense, grammatically or legally.

¶58. Section 37-28-55(2) is unconstitutional beyond a reasonable doubt, because it contravenes the plain language of Article 8, Section 206, of the Mississippi Constitution by requiring a local school district to give a portion of its ad valorem tax receipts to schools that are outside the purview of "its schools." This Court should reverse the chancellor's decision to the contrary. Therefore, I dissent.

**KITCHENS, P.J., JOINS THIS OPINION.**