LAMAR, Justice, for the Court: and this Court appointed Judge Franklin McKenzie as special chancellor.
*600 ¶ 1. The Mississippi Legislature passed a law mandating that the revenue the Pas-cagoula School District (“PSD”) collected from ad valorem taxes levied on liquified natural gas terminals and crude oil refineries be distributed to all school districts in the county where the terminals and refineries are located. The Pascagoula School District — which contains a Chevron crude oil refinery and a Gulf liquified natural gas terminal — brought suit, seeking a declaration that the new law was unconstitutional and requesting injunctive relief. All parties filed for summary judgment. After a hearing, the trial judge ruled that the law was constitutional, and the plaintiffs appeal that decision. Because we find the contested statute violates the constitutional mandate that a school district’s taxes be used to maintain “its schools,” we reverse and remand for proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 2. Jackson County has four school districts-the Jackson County School District (which educates about 37% of the countys total students), the PSD (28.5%), the Ocean Springs School District (22%), and the Moss Point School District (12.5%). The PSD’s method[1] for collecting and distributing ad valorem tax revenue to its schools is based on statutory law and an “interlocal agreement”[2] and includes the following steps:
1. The County assesses the value of “all of the taxable property” within the school district.
2. The school district sets its budget for the coming school year. See Miss Code Ann. § 37-57-104(1) (Rev. 2007).
3. The City of Pascagoula, as the levying authority for the PSD, divides the budget by the value of “all of the taxable property” to yield a millage rate which, when applied to the assessed value, yields an amount “equal to the dollar amount” requested by the school district. See Miss.Code Ann. §§ 37-57-1 and 37-57-104(1) (Rev. 2007).
4. The County uses the millage rate to levy school taxes, collects them, and forwards the school tax money to the City for deposit into the “district maintenance fund of the school district.” See Miss.Code Ann. § 37-57-1 (Rev. 2007).
The PSD’s ad valorem tax base includes both a Chevron crude oil refinery and a Gulf liquified natural gas terminal.[3]
¶ 3. In 2007, the Mississippi Legislature passed Senate Bill 2403. Section 2 of SB 2403 was later codified as Mississippi Code Section 19-9-171, and states:
The revenue from ad valorem taxes for school district purposes that are levied *601 upon liquefied natural gas terminals or improvements thereto constructed after July 1, 2007, crude oil refineries constructed after July 1, 2007, and expansions or improvements to existing crude oil refineries constructed after July 1, 2007, shall be distributed to all public school districts in the county in which the facilities are located in the proportion that the average daily attendance of each school district bears to the total average daily attendance of all school districts in the county. The county or municipal tax collector, as the case may be, shall pay such tax collections, except for taxes collected for the payment of the principal of and interest on school bonds or notes and except for taxes collected to defray collection costs, into the appropriate school depository and report to the school board of the appropriate school district at the same time and in the same manner as the tax collector makes his payments and reports of other taxes collected by him.
Miss.Code Ann. § 19-9-171 (Supp.2011) (emphasis added). Concerned that it would lose a portion of the ad valorem tax revenue generated by the tax levy, the PSD, along with the City of Pascagoula, Daniel Marks (an individual taxpayer within the district) and Katherine Mitchell (a minor who attended school in the district) filed a Petition for Declaratory Judgment and Injunctive Relief in the Jackson County Chancery Court. The plaintiffs named as defendants Joe Tucker (Jackson County Tax Collector), Benny Goff (Jackson County Tax Assessor), the Board of Supervisors of Jackson County and the State of Mississippi.[4]
¶ 4. The plaintiffs asserted that Section 19-9-171 violates Article 4, Section 112 of the Mississippi Constitution,[5] because it prohibits the PSD from receiving the full ad valorem tax revenue amount from the oil refinery and the gas terminal, thereby “denying [the PSD] the right to levy” on that property in the same way as it would on all other property in the district. The plaintiffs also asserted that Section 19-9-171 was invalid because it directly conflicts with Sections 37-57-1(2)[6] and 37-57-105(1),[7] which state that the county *602 tax collector is to deposit all school taxes into the district’s maintenance and depository funds.[8] The plaintiffs requested a declaration that Section 19-9-171 is unconstitutional and a permanent injunction prohibiting the defendants from “enforcing, assessing, levying and re-distributing any future ad valorem taxes levied by or on behalf of the [PSD] to other school districts.... ”
¶ 5. After all named defendants filed their answers, the other three Jackson County school districts filed a motion to intervene as defendants, which the special chancellor granted.[9] After some discovery, the Jackson County Board of Supervisors, along with Goff and Tucker, jointly filed a motion for summary judgment, which the intervening school districts joined. The intervening school districts, the State of Mississippi, and the plaintiffs also filed motions for summary judgment. After responses were filed, the chancellor held a hearing on the motions. After hearing arguments from all parties, the chancellor found that the plaintiffs had not proven beyond a reasonable doubt that Section 19-9-171 is unconstitutional. He subsequently issued an order denying the plaintiffs’ motion for summary judgment and granting all of the defendants’ motions for summary judgment.
¶ 6. The plaintiffs filed a notice of appeal. A couple of months later, the plaintiffs filed a motion to stay in the chancery court, arguing for the first time that Section 19-9-171 violates Article 8, Section 206[10] of the Mississippi Constitution. The plaintiffs sought an order directing the Jackson County Tax Collector to distribute the disputed funds[11] to the City of Pasca-goula, to be kept in a separate, interest-bearing account. After the chancellor denied their motion to stay, the plaintiffs filed a motion to reconsider, which the chancellor also denied. The plaintiffs then filed a motion to stay with their initial brief to this Court, which this Court also denied.
¶ 7. On appeal, the plaintiffs argue that Section 19-9-171 violates Article 8, Section 206 and Article 4, Section 112 of the Mississippi Constitution. Specifically, the plaintiffs ask:
1. When Section 206 of the Mississippi Constitution says the purpose of a local school district tax is to maintain “its schools,” can the Legislature force a district to divide its maintenance tax levy with other districts?
*603 2. When Section 112 of the Mississippi Constitution says a taxing authority shall not be denied the right to levy an ad valorem tax on “all property” in the same manner, can the Legislature force a city to exclude $46.8 million in property value from its tax base when it calculates the school maintenance levy so that [that] value can be taxed for the benefit of other districts?[12]
Because we find that Section 19-9-171 violates Article 8, Section 206, we decline to address whether it also violates Article 4, Section 112.
ANALYSIS
¶ 8. This Court conducts a de novo review when deciding whether the trial court properly granted a motion for summary judgment. Conrod v. Holder, 825 So.2d 16, 18 (Miss.2002). Likewise, this Court applies de novo review to questions of law, including the constitutionality of a statute. Wells by Wells v. Panola County Bd. of Educ., 645 So.2d 888, 888 (Miss.1994).
¶ 9. A party seeking to have a statute declared unconstitutional in Mississippi has a heavy burden: he must prove that the statute is unconstitutional “beyond a reasonable doubt.” Cities of Oxford, Carthage, Louisville, Starkville, & Tupelo v. Northeast Mississippi Elec. Power Ass’n, 704 So.2d 59, 65 (Miss.1997). “ ‘In determining whether an act of the Legislature violates the Constitution, the courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution.’ ” State v. Bd. of Levee Comm’rs, 982 So.2d 12,19 (Miss.2006) (citations omitted). “[T]o state that there is doubt regarding the constitutionality of an act is to essentially declare it constitutionally valid.” Moore v. Bd. of Supervisors of Hinds County, 658 So.2d 883, 887 (Miss.1995). “Nonetheless, ‘no citation of authority is needed for the universally accepted principle that if there be a clash between the edicts of the constitution and the legislative enactment, the latter must yield.’ ” Bd. of Levee Comm’rs, 932 So.2d at 26 (citation omitted).
¶ 10. As an initial matter, the defendants argue strenuously that the plaintiffs waived their argument that Section 19-9-171 violates Section 206 of the Mississippi Constitution, because they did not raise that argument until their motion to stay before the chancery court. The defendants are correct that this Court has stated repeatedly that constitutional questions not raised in the trial court will not be reviewed on appeal. See e.g., Stockstill v. State, 854 So.2d 1017, 1023 (Miss.2003) (“[T]his Court has also consistently held that errors raised for the first time on appeal will not be considered, especially where constitutional questions are concerned.”). However, in acknowledging this very “sound principle^]” this Court also has stated that we will “depart from this premise ... in unusual circumstances.” Cockrell v. Pearl River Valley Water Supply Dis., 865 So.2d 357, 360 (Miss.2004); see generally Bd. of Educ. of Benton County v. State of Educ. Fin. Comm’n, 243 Miss. 782, 138 So.2d 912, 924-25 (1962) (reviewing a constitutional issue raised for first time on appeal and requesting additional briefs on that issue).
¶ 11. We find this case presents such an unusual circumstance, compelling us to address the merits of the plaintiffs’ Section 206 argument. First, we note that the *604 plaintiffs did raise their Section 206 argument in the chancery court — albeit late— in their motion to stay, giving the defendants and the trial court an opportunity to address it. The defendants were aware of the argument, briefly addressed it in their initial briefs to this Court, and assert no prejudice from the plaintiffs’ failure to raise this issue in their initial pleadings. And after oral argument before this Court, we granted the defendants’ request to file a supplemental brief to more fully address the issue.
¶ 12. Additionally, this case affects the rights of all taxpayers in Jackson County and is of grave importance to every school district in the county. It would serve no purpose to delay our answer for another day while the revenue distributed according to that statute potentially is lost. But most significantly, Article 8, Section 206 is the enabling authority for a school district’s ad valorem taxation power in this state, and we are unable to analyze the case without considering it. Consequently, we disagree with the dissent that we are abdicating our role as an appellate court and somehow creating original jurisdiction by reviewing Section 206. We are not deciding facts, but a legal question. In reviewing the substance of the plaintiffs’ arguments before the trial court (see supra ¶ 4), we are charged with considering all law bearing on this subject, which unavoidably includes Section 206. And this Court, “as a matter of institutional necessity and constitutional imperative, is the ultimate expositor of the law of this state [and] ... on matters of law, it is our job to get it right.” UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc., 525 So.2d 746, 754 (Miss.1987). Thus, we must look to Section 206 regardless of the plaintiffs’ failure to initially designate that section by name, since the substance of their argument unavoidably falls within that constitutional provision.
Whether Section 19-9-171 violates Section 206’s mandate that a school district’s taxes be used to maintain “its schools.”
¶ 13. The plaintiffs argue that Section 19-9-171 violates Article 8, Section 206 of the Mississippi Constitution, based on Section 206’s plain language, its history, the pre-2007 statutory scheme and case-law. We look no further than the plain language of Section 206 to agree with the plaintiffs.
¶ 14. Article 8, Section 206 of the Mississippi Constitution states:
There shall be a state common-school fund, to be taken from the General Fund in the State Treasury, which shall be used for the maintenance and support of the common schools. Any county or separate school district may levy an additional tax, as prescribed by general law, to maintain its schools. The state common-school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined by data collected through the office of the State Superintendent of Education in the manner to be prescribed by law.
Miss. Const, art. 8, § 206 (1890) (emphasis added). The plain language of Section 206 grants the PSD the authority to levy an ad valorem tax and mandates that the revenue collected be used to maintain only its schools. Conversely, no such authority is given for the PSD to levy an ad valorem tax to maintain schools outside its district. And as this Court stated in Board of Levee Commissioners, “ ‘[the] expression of the purpose of the tax in the act is an exclusion of all other purposes.’ ” Bd. of Levee Comm’rs, 932 So.2d at 25 (citation omit *605 ted). However, the defendants urge a contrary interpretation of Section 206, so we now turn to address their arguments.
¶ 15. The defendants, and likewise Chief Justice Waller in his dissent, urge this Court to hold that Section 19-9-171 is a legitimate exercise of the Legislature’s plenary power under Article 8, Section 201 of the Mississippi Constitution, which mandates that the Legislature shall “as prescribed, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe.” The defendants argue that the phrase “as prescribed by general law” in Section 201 clearly “recognizes and carries forth the historical and inherent prerogatives of the Legislature vis-a-vis the political subdivisions to act by statute in matters regarding local school revenues and support and taxation....” The defendants argue that the Legislature has “prescribed by general law” the details of state and local school finance in Title 87, and that it has successfully incorporated Section 19-9-171 into that general law via Section 37-57_l.[13] disagree and find that the phrase “as prescribed by general law” means that the Legislature is to establish, through general law, the method by which a “county or separate school district may levy an additional tax.” No doubt Section 201 grants the Legislature broad power to regulate school finance, but it must be read in conjunction with Section 206. The Legislature’s plenary power does not include the power to enact a statute that— on its face — directly conflicts with a provision of our Constitution. Section 206 specifically limits the use of the tax revenue from a school district’s tax levy to the maintenance of “its schools,” and the Legislature’s plenary taxation power does not authorize it to ignore this restriction. The Legislature has no authority to mandate how the funds are distributed, as Section 206 clearly states that the purpose of the tax is to maintain the levying school district’s schools. Thus, we conclude that the plain language of Section 206 that grants a school district the right to levy taxes to maintain “its schools” defines the limits of power granted to the Legislature by Section 201. Were we to adopt the defendants’ position and uphold Section 19-9-171 as a legitimate exercise of legislative power under Section 201, the phrase “to maintain its schools” in Section 206 would be rendered a complete nullity. We decline to adopt that interpretation.
¶ 16. The defendants also argue that “statutes dealing with revenue, tax distribution and public monies are solely the province of the legislative branch of government.” The Defendants cite several cases to support their proposition that the Legislature has plenary power over taxation issues, including the distribution of revenue. See e.g., City of Belmont v. Mississippi State Tax Comm’n, 860 So.2d 289, 307 (Miss.2003) (“The right of the Legislature to control the public treasury, to determine the sources from which the public revenues shall be derived and the objects upon which they shall be expended, to *606 dictate the time, the manner, and the means both of their collection and disbursement, is firmly and inexpugnably established in our political system.”); McCullen v. State ex rel. Alexander for Use of Hinds County, 217 Miss. 256, 63 So.2d 856, 862 (1953) (“the Legislature has the power to distribute a portion of the tax in any manner, upon any basis, and under any formula which it may prescribe”); Adams v. Kuykendall, 83 Miss. 571, 35 So. 830, 835 (1903) (“The Legislature has plenary power to deal with the entire subject of taxation. Its power is supreme in devising the machinery for assessing the taxable property, imposing taxes thereon, and collecting and disbursing the same.”).
¶ 17. But, although these cases do recognize the power of the Legislature to control taxation issues, none holds that the Legislature may exercise that power in violation of the Constitution. This Court has explicitly recognized that legislative power in taxation issues is limited by the Constitution:
Under all constitutional governments recognizing three distinct and independent magistracies, the control of the purse strings of government is a legislative function. Indeed, it is the supreme legislative prerogative, indispensable to the independence and integrity of the Legislature, and not to be surrendered or abridged, save by the Constitution itself, without disturbing the balance of the system and endangering the liberties of the people.
City of Belmont, 860 So.2d at 306-07 (emphasis added).
¶ 18. Furthermore, the defendants’ reliance on this Court’s decision in Harrison County School District v. Long Beach School District, 700 So.2d 286 (Miss.1997), is misplaced. There, the Legislature passed several bills allowing several municipalities on the Mississippi Coast to tax the casinos within their municipality. Id. at 287. Each bill directed the municipality to use the collected funds for specific purposes, with the one at issue being “for educational purposes in Harrison County.” Id. After the funds were distributed to the Harrison County School District only, the Long Beach School District brought suit, claiming that it was entitled to some of the funds. Id. at 287-88. The trial judge found that “the clear and unambiguous language of the statute required that the funds generated from the casino tax be distributed throughout the entirety of Harrison County for educational purposes!,]” and this Court affirmed. Id. at 288, 290.
¶ 19. The defendants claim that this decision “ratifies the constitutionality of a legislative decision allowing the revenue which is levied and collected by one political subdivision to be distributed to other political subdivisions.” But we find this case distinguishable from the case at hand. In Harrison County, the municipalities’ power to tax the casinos came from the Legislature, so it follows that the Legislature had the authority to establish the purpose of the tax and to direct where the funds would be spent. But here, PSD’s authority to tax comes from Section 206 of the Constitution, which provides that the purpose of the tax levied by the PSD is to “maintain its schools.”
¶ 20. The defendants’ reliance on this Court’s decision in Miller v. State, 130 Miss. 564, 94 So. 706 (1923), is also misplaced. The defendants argue that, under Miller, “[Section] 206 cannot be given a narrow, purportedly ‘literal’ interpretation so as to invalidate the legislative statutes directed to the support of public schools.” While it is true that the Miller Court chose a less restrictive view of Section 206, the facts are distinguishable. At the time Miller was decided, Section 206 stated:
*607 There shall be a county common school fund, which shall consist of the poll tax, to be retained in the counties where the same is collected, and a state common school fund, to be taken from the general fund in the state treasury, which together shall be sufficient to maintain the common schools for the term of four months in each scholastic year. But any county or separate school district may levy an additional tax to maintain its schools for a longer time than the term of four months. The state common school fund shall be distributed among the several counties and separate school districts in proportion to the number of educable children in each, to be determined from data collected through the office of the state superintendent of education in the manner to be prescribed by law.
Id. at 708 (emphasis added). At issue in Miller was a statute authorizing a separate state fund in addition to the state common school fund, which was to be distributed “in such a manner as to equalize public school terms as nearly as possible throughout the state[.]” Id. at 707.
¶ 21. The State Auditor brought suit, arguing that the new law was void because, among other things, it provided for distribution of the fund on a non-per-capita basis. Id. at 708. But this Court declined to invalidate the law, holding that, although the Auditor’s argument was not without merit, “it is a reasonable view to interpret that part of [S]ection 206 which provides for a per capita distribution as meaning that the distribution on this basis should be made with reference solely to the funds provided for the four months term named in this section.” Id. at 709. But here, the plain language of the current version of Section 206 (which was not in effect at the time of Miller) clearly states that a school district may tax to fund “its schools,” leaving no room for an interpretation allowing the Legislature to mandate that the funds be distributed elsewhere.
CONCLUSION
¶ 22. We find that Section 19-9-171 violates Section 206’s constitutional mandate that a school district’s taxes be used to maintain “its schools.” And because we find that Section 19-9-171 violates Section 206, we decline to address whether it violates Section 112 as well. We reverse and remand this case to the trial court for further proceedings consistent with this opinion.
¶ 23. REVERSED AND REMANDED.
CARLSON AND DICKINSON, P.JJ., KITCHENS AND KING, JJ., CONCUR. WALLER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED IN PART BY RANDOLPH AND CHANDLER, JJ. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND CHANDLER, J. PIERCE, J., NOT PARTICIPATING.

. The record does not reveal how the other school district’s ad valorem taxes are collected and distributed.

. This is an agreement between Jackson County and the City of Pascagoula, wherein Jackson County agreed to collect “all City and Pascagoula Municipal Separate School District ad valorem taxes” and deliver them to the City.

.The liquified gas terminal was in the planning stages when the suit was filed, but apparently now is completed.

. The Attorney General's Office participated in this case in the court below and on appeal.

. Section 112 of the Mississippi Constitution states, in pertinent part:
The Legislature may provide for a special mode of valuation and assessment for railroads, and railroad and other corporate property, or for particular species of property belonging to persons, corporations or associations not situated wholly in one (1) county. All such property shall be assessed in proportion to its value according to its class, and no county, or other taxing authority, shall be denied the right to levy county and/or special taxes upon such assessment as in other cases of property situated and assessed in the county, except that the Legislature, by general law, may deny or limit a county or other taxing authority the right to levy county and/or special taxes on nuclear-powered electrical generating plants. Miss. Const, art 4, § 112 (1890) (emphasis added).

. Mississippi Code Section 37-57-1(2) states, in pertinent part:
The amount of taxes so collected as a result of such levy shall be paid into the district maintenance fund of the school district by the tax collector at the same time and in the same manner as reports and payments of other ad valorem taxes are made by said tax collector, except that the amount collected to defray costs of collection may be paid into the county general fund.
Miss.Code Ann. § 37-57-1(2) (Rev. 2007) (emphasis added).

. Mississippi Code Section 37-57-105(1) states, in pertinent part:
The proceeds of such tax levy, excluding levies for the payment of the principal of and interest on school bonds or notes and excluding levies for costs of collection, shall *602 be placed in the school depository to the credit of the school district and shall be expended in the manner provided by law for the purpose of supplementing teachers’ salaries, extending school terms, purchasing furniture, supplies and materials, and for all other lawful operating and incidental expenses of such school district, funds for which are not provided by adequate education program fund allotments.
Miss.Code Ann. § 37-57-105(1) (Rev. 2007) (emphasis added).

. The plaintiffs also alleged several equal protection violations, but they do not advance those arguments on appeal.

. All three Sixteenth District Chancery Court chancellors recused themselves from the case,

. Section 206 of the Mississippi Constitution states, in pertinent part: "Any county or separate school district may levy an additional tax, as prescribed by general law, to maintain its schools." Miss. Const, art. 8, § 206 (1890) (emphasis added).

. Jackson County had determined that approximately $66 million in real property qualified as post-2007 construction. Pursuant to Section 19-9-171, the tax revenues on that amount would be distributed to all the school districts in Jackson County, in proportion to their average daily attendance. Miss. Code Ann. § 19-9-171 (Supp.2011).

. The plaintiffs also present a variation of these arguments in their briefs, asserting that allowing Section 19-9-171 to stand would violate the "local tax, local benefit” rule.

. Again, Section 37-57-1 provides, in pertinent part:
Except as otherwise provided in Section 19-9-171, the county or municipal tax collector, as the case may be, shall pay such tax collections, except for taxes collected for the payment of the principal of and interest on school bonds or notes and except for taxes collected to defray collection costs, into the school depository and report to the school board of the appropriate school district at the same time and in the same manner as the tax collector makes his payments and reports of other taxes collected by him.
Miss.Code Ann. § 37-57-1 (Rev. 2007) (emphasis added.)