# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00336-SCT

*HWCC-TUNICA, INC./HWCC-TUNICA, LLC AND
BSL, INC./BSLO, LLC*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE AND
MISSISSIPPI GAMING COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/28/2019 |
| TRIAL JUDGE: | HON. WATOSA MARSHALL SANDERS |
| TRIAL COURT ATTORNEYS: | A. THOMAS TUCKER III |
| | BRIDGETTE T. THOMAS |
| | JUSTIN P. WARREN |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | A. THOMAS TUCKER III |
| ATTORNEYS FOR APPELLEES: | MORTON W. SMITH |
| | JUSTIN P. WARREN |
| | BRIDGETTE T. THOMAS |
| | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEANNE SALTZMAN |
| | LOUIS FRASCOGNA |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/28/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     HWCC-Tunica, LLC, and BSLO, LLC, have casino members' rewards programs that allow members to earn entries into random computerized drawings to win prizes. In 2014, after recalculating their gross revenue and deducting the costs of prizes from their rewards programs' drawings, HWCC and BSLO filed individual refund claims for the tax period of

October 1, 2011, through August 31, 2014. The Mississippi Department of Revenue (MDOR) denied the refund claims in 2015.

¶2. In 2017, having exhausted all of their administrative remedies, HWCC and BSLO appealed the MDOR's refund denial and filed individual chancery court petitions against the MDOR and the Mississippi Gaming Commission (MGC) in the Chancery Court of Tunica County and the Chancery Court of Hancock County. The MDOR and the MGC filed a joint motion for summary judgment, arguing that the plain language of Mississippi Code Section 75-76-193 (Rev. 2016) does not allow a casino to deduct the cost of prizes purchased for a rewards program's drawings because "these promotional giveaways are not the result of 'a legitimate wager' as used in [Mississippi Code Section] 75-76-193." After a hearing on the motion, the chancellor determined that Section 75-76-193 does not allow HWCC and BSLO to deduct the cost of the prizes and that there were no genuine issues of material fact.

¶3. HWCC and BSLO appealed. We find that the chancellor erred by giving deference to the MDOR's and the MGC's interpretations of Code Section 75-76-193. But we find that even though the chancellor did err by giving deference, she reached the right conclusion: that no genuine issues of material fact existed. Accordingly, we affirm the chancellor's grant of summary judgment.

## STATEMENT OF THE FACTS

¶4. In 2013, HWCC-Tunica, Inc., converted into HWCC-Tunica, LLC. Also in 2013, BSL, Inc., converted into BSLO, LLC. HWCC operates the Hollywood Casino in Tunica County, Mississippi, and BSLO operates the Hollywood Casino in Hancock County,

2

Mississippi.[1] Both are subsidiaries of Penn National Gaming, Inc., and both are subject to the Mississippi Gaming Control Act. *See* Miss. Code Ann. § 75-76-1 (Rev. 2016).

¶5. Hollywood Casinos has a rewards program for its patrons entitled "Marque Rewards." The Marque Rewards program allows those casino patrons who join to earn entries into computerized drawings that randomly select members to receive "personal property items including cash, I-pads, televisions and vehicles." There are three methods by which Marque Rewards members can earn entries into these drawings: (1) the active-play method; (2) the kiosk method; and (3) the ADT (a player's "average daily theoretical") method.

¶6. To earn entries by the active-play method, rewards members must accumulate points earned on a coin-in basis by actively gambling or by wagering in a casino game with his or her rewards card inserted into that game's machine. For HWCC, every dollar put in equals one point. BSLO has the same coin-in equation for casino games, except for the game of video poker, in which every two dollars put in equals one point. The kiosk method allows rewards members to earn "one drawing entry" by swiping his or her rewards card at one of the designated kiosks placed throughout the casino. The final method, the ADT method, is the one by which the majority of rewards members earn their entries into the computerized drawings. This method uses a tier-points system, which is based on a member's ADT. The rewards member's ADT is calculated by means of a complex algorithm that considers several factors, such as the time spent, the speed of placing a wager, and the amount of the wager. These points, earned by members' actively gambling or wagering, then are converted into tier

---

[1]We refer collectively to HWCC-Tunica and BSLO as "Hollywood Casinos" unless reference is made to either of them individually.

points. As the tier points accumulate, the rewards members earn entries into the drawings. Unlike the other two methods, the ADT method does not contain a limit on the number of entries per person.

¶7. In 2014, in response to an interpretation of a similar gaming statute by the Pennsylvania Supreme Court, Hollywood Casinos hired an accounting firm to conduct a review of its prior gaming taxes and calculate the amount of personal property that was distributed to rewards members for slot machine play.[2] The accounting firm concluded that from October 1, 2011, to August 31, 2014, the following amounts of personal property had been distributed to rewards members as a result of slot machine play: $763,055.76 by HWCC and $1,424,292.83 by BSLO. Hollywood Casinos then, under Section 75-76-193, deducted these personal property costs from its gross revenue figures for slot machine play and sought a refund or credit for the tax periods beginning October 1, 2011, and ending August 31, 2014. *See* Miss. Code Ann. § 75-76-193 (Rev. 2016). HWCC sought a refund or credit in the amount of $91,566.69 and BSLO sought a refund or credit in the amount of $173,790.68. Hollywood Casinos provided documents and data detailing each computerized drawing that had been held during the applicable tax periods.[3]

---

[2]*See* ***Greenwood Gaming and Entm't v. Pa. Dep't of Revenue***, 90 A.3d 699, 714 (Pa. 2014).

[3]These documents include "the criteria used to award prizes for each promotion," the individual player numbers for each prize winner, the invoices for each prize, and a detailed breakdown of the promotional spend. The promotional spend breakdown included "a description of how entries were earned for each specific promotion, . . . a description of the prize, prize's value [ ], the use tax paid for that prize, and a per-prize itemization of the gaming tax paid that was allocated to each prize." The following were omitted: "all prize winners who exclusively played table games" and the value of those prizes, drawings "based

¶8.    On June 17, 2015, the MDOR denied Hollywood Casinos' refund claim and cited the Mississippi Gaming Regulation, Title 13, Part 7, Rule 3.3(k), as the reason for the denial. *See* 13 Miss. Admin. Code Pt. 7, R. 3.3(k) (adopted May 1, 2013), Westlaw. Hollywood Casinos timely appealed the MDOR's denial to the Review Board, which upheld the denial. Hollywood Casinos timely appealed that ruling to the Board of Tax Appeals, which denied its refund claim and affirmed the Review Board's ruling.

¶9.    In February 2017, under Mississippi Code Section 27-77-7, HWCC and BSLO appealed the MDOR's decision to their respective chancery courts.[4] On May 26, 2017, the Chancery Court of Tunica County entered an agreed order providing that BSLO's action was to be transferred to and consolidated with HWCC's action in Tunica County.

¶10.    On March 30, 2018, the MDOR and the MGC filed a joint motion for summary judgment, arguing that "[Mississippi Code Section] 75-76-193 is clear and unambiguous[,]" and even  though no deference was given to the applicable MDOR  and MGC  regulations, Hollywood Casinos' computerized drawings are not the result of "legitimate wager" under Section 75-76-193. On April 30, 2018, Hollywood Casinos filed its response opposing the joint motion for summary judgment.

¶11.    The chancellor held a hearing regarding the motion on December 20, 2018. On January 28, 2019, the chancellor granted the MDOR's and the MGC's joint motion for summary judgment. The chancellor determined that

exclusively on table play," and "the value of all awards of free slot play."

[4]HWCC filed its petition in the Chancery Court of Tunica County, Mississippi, and BSLO filed its petition in the Chancery Court of Hancock County, Mississippi.

5

1. Promotional activity is separate from slot machine activity and not deductible under [Section] 75-76-193;

2. The promotional giveaways are not deductible under the [MGC's] [r]egulations because they are not "winnings" or "the direct result of slot machine play" or "determined by coin out";

3. The promotional giveaways are not the result of a "legitimate wager";

4. [Hollywood Casinos] cannot verify whether all entries related to the promotional giveaways are the result of slot machine wagers, and

5. [Hollywood Casinos] in the request for a "deduction" under [Section] 75-76-193 [has] the burden of proof and [Section] 75-76-193 is construed in favor of [the MDOR and the MGC].

Additionally, the chancellor adjudicated that "this matter of law is reviewed de novo, but with great deference to the agency's interpretation." She continued, describing the applicable standard of review as follows:

[I]f an agency's interpretation is contrary to the unambiguous terms or best reading of a statute, no deference is due. An agency's interpretation will not be upheld if it is so plainly erroneous or so inconsistent with either the underlying regulation or statute as to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *Miss. Methodist Hosp. and Rehab. Ctr., Inc. v. Miss. Div. Of Medicaid*, 21 So. 3d 600, 606-07 (Miss. 2009) (internal quotations and citations omitted). *Buffington v. Mississippi State Tax Com'n*, 43 So. 3d 450, 453-54 (Miss. 2010).

The chancellor went on to interpret Section 27-77-7(5) to give courts authority to defer to the MDOR's and the MGC's regulations and other publications that interpret statutes.

¶12. Hollywood Casinos raises four issues on appeal. First, Hollywood Casinos argues that the chancellor erred by applying the incorrect standard of review under the applicable version of Section 27-77-7. Second, it asserts that the portion of Section 27-77-7(5) that requires courts to give deference to an agency's interpretations of statutes is unconstitutional because

6

it violates the separation of powers doctrine. Third, it argues that the chancellor erred by giving deference to the MDOR's and the MGC's interpretations of Section 75-76-193, which it claims are contrary to the unambiguous terms or best reading of the statute. Finally, Hollywood Casinos contends that the chancellor erred by finding that no genuine issues of material fact existed.

¶13. The MDOR and the MGC contend that the chancellor did not err because, even though she did mention giving deference to the MDOR's and the MGC's interpretations, the chancellor properly found that the Hollywood Casinos failed to show genuine issues of material fact as to whether Section 75-76-193 was applicable in this case.

## **STANDARD OF REVIEW**

¶14. This Court has held that "Mississippi Code Section 27-77-7(5) provides the process and standard of review for chancery court review of MDOR and [Mississippi Board of Tax Appeals] decisions, and issues related to such are questions of law." *Miss. Dep't of Revenue v. Hotel and Rest. Supply*, 192 So. 3d 942, 945 (Miss. 2016) (citing *Equifax, Inc. v. Miss. Dep't of Revenue*, 125 So. 3d 36, 41 (Miss. 2013)). This Court reviews "questions of law de novo." *Campbell Props., Inc. v. Cook*, 258 So. 3d 273, 275 (Miss. 2018) (citing *McNeil v. Hester*, 753 So. 2d 1057, 1063 (Miss. 2000)).

¶15. In *King v. Mississippi Military Department*, this Court abandoned its "old standard of review giving deference to agency interpretations of statutes" and established that we now will conduct a *de novo* review without giving such deference. *King v. Miss. Military Dep't*, 245 So. 3d 404, 407-08 (Miss. 2018).

¶16.    "Matters of statutory interpretation also are reviewed by this Court using a de novo standard." ***Chandler v. McKee***, 202 So. 3d 1269, 1271 (Miss. 2016) (citing ***Wallace v. Town of Raleigh***, 815 So. 2d 1203, 1206 (Miss. 2002)). "Where a statute is unambiguous, the Court must apply the statute according to its plain meaning, refraining from principles of statutory construction." ***OXY USA, Inc. v. Miss. State Tax Comm'n***, 757 So. 2d 271, 274 (Miss. 2000) (citing ***City of Natchez v. Sullivan***, 612 So. 2d 1087, 1089 (Miss. 1992)). This Court has held that "[s]tatutory interpretation is appropriate when a statute is ambiguous or silent on a specific issue." ***Lewis v. Hinds Cty. Circuit Court***, 158 So. 3d 1117, 1120 (Miss. 2015) (citing ***Miss. Methodist Hosp. & Rehab. Ctr., Inc. v. Miss. Div. of Medicaid***, 21 So. 3d 600, 607 (Miss. 2009), *abrogated by* ***King***, 245 So. 3d at 404).

¶17.    As for constitutional issues, this Court applies "a de novo standard of review when deciding the constitutionality of a state statute." ***Kansler v. Miss. Dep't of Revenue***, 263 So. 3d 641, 645 (Miss. 2018) (citing ***Commonwealth Brands, Inc. v. Morgan***, 110 So. 3d 752, 758 (Miss. 2013)). Specifically, this Court has held,

> "When addressing a statute's constitutionality, we apply a de novo standard of review, bearing in mind (1) the strong presumption of constitutionality; (2) the challenging party's burden to prove the statute is unconstitutional beyond a reasonable doubt; and (3) all doubts are resolved in favor of a statute's validity." ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243-44 (Miss. 2012) (citations omitted). "The statutes must be shown to be in direct conflict with 'the clear language of the constitution.'" ***5K Farms, Inc. v. Miss. Dep't of Revenue***, 94 So. 3d 221, 227 (Miss. 2012) (quoting ***PHE, Inc. v. State***, 877 So. 2d 1244, 1247 (Miss. 2004)). "'[T]he courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution.'" ***Id.*** (quoting ***Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell***, 216 Miss. 358, 62 So. 2d 383, 385 (1953)). "'When a party invokes our power of judicial review, it behooves us to recall

that the challenged act has been passed by legislators and approved by a governor sworn to uphold the selfsame constitution as are we.'" *Id.* (quoting *State v. Roderick*, 704 So. 2d 49, 52 (Miss. 1997)).

*Clark v. Bryant*, 253 So. 3d 297, 300 (Miss. 2018).

¶18. Additionally, "a *de novo* standard is applied when the Court reviews a chancery court's grant or denial of summary judgment." *Miss. Dep't of Revenue v. Isle of Capri Casinos, Inc.*, 131 So. 3d 1192, 1194 (Miss. 2014) (citing *Williams v. Duckett (In re Guardianship of Duckett)*, 991 So. 2d 1165, 1173 (Miss. 2008)). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Miss. State and Sch. Emps.' Life and Health Plan v. KCC, Inc.*, 108 So. 3d 932, 935 (Miss. 2013) (citing Miss. R. Civ. P. 56(c)).

## DISCUSSION

I.   **Did the chancellor err by applying the incorrect standard of review under the applicable version of Section 27-77-7(5) by giving deference to a prior MDOR decision?**

¶19. Hollywood Casinos asserts that the chancery court applied the incorrect standard of review by giving deference to a prior MDOR decision, which no longer is allowed under the current version of Section 27-77-7(5). The older version of Section 27-77-7(5) provided in pertinent part that

> At trial of any action brought under this section, the chancery court shall give deference to the decision and interpretation of law and regulations by the Department of Revenue as it does with the decisions and interpretation of any

9

administrative agency, but it shall try the case de novo and conduct a full evidentiary judicial hearing on the issues raised.

Miss. Code Ann. § 27-77-7(5) (Rev. 2010). Section 27-77-7(5) was amended in 2014 and now includes the following language:

> At trial of any action brought under this section, the chancery court shall give no deference to the decision of the Board of Tax Appeals, the Board of Review or the Department of Revenue, but shall give deference to the department's interpretation and application of the statutes as reflected in duly enacted regulations and other officially adopted publications. The chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being appealed. The chancery court is expressly prohibited from trying any action filed pursuant to this section using the more limited standard of review specified for appeals in Section 27-77-13 of this chapter.

Miss. Code Ann. § 27-77-7(5) (Rev. 2017).

¶20.    The 2014 amendment to Section 27-77-7(5) no longer allows a trial court to defer to an agency's prior decisions, but it continues to demand that courts "shall give deference" to an agency's interpretations of statutes. Miss. Code Ann. § 27-77-7(5) (Rev. 2017).

¶21.    Hollywood Casinos provides no evidence in its brief that the chancellor gave deference to prior MDOR decisions. The chancellor cited the current version of Section 27-77-7(5) in her order and recognized that the statute gives courts authority to defer to an agency's regulations that interpret statutes and directs them not to give deference to an agency's prior decision. Thus, this issue is without merit.

¶22.    While we find that the chancellor applied the correct version of Section 27-77-7(5), this does not impact our analysis below regarding the constitutionality of Section 27-77-7(5).

10

## II.     Is Section 27-77-7(5) unconstitutional?

### A.     Can Hollywood Casinos challenge the constitutionality of Mississippi Code Section 27-77-7(5)?

¶23.    Hollywood Casinos argues that "[t]he portion of Section 27-77-7 of the Mississippi Code which requires the [c]ourt to give deference to the MDOR's interpretation of statutes is unconstitutional as it violates the constitutional separation of powers." *See* Miss. Const. art. 1, §§ 1, 2.

¶24.    The MDOR and the MGC argue that Hollywood Casinos is barred from asserting its constitutional argument because this challenge is being raised for the first time on appeal. It is apparent from the record that Hollywood Casinos did not specifically plead or raise this constitutional challenge in the trial court. The MDOR and the MGC rely on ***Barnes v. Singing River Hospital Systems***, which states,

> As Singing River points out, the constitutionality issue is barred, because it was not raised in the trial court and because the Attorney General's Office was not properly notified. "We accept without hesitation the ordinarily sound principle that this Court sits to review actions of trial courts and that we should undertake consideration of no matter which has not first been presented to and decided by the trial court. We depart from this premise only in unusual circumstances." ***Educational Placement Services v. Wilson***, 487 So. 2d 1316, 1320 (Miss. 1986). "The law has been well settled that the constitutionality of a statute will not be considered unless the point is specifically pleaded." ***Smith v. Fluor Corp.***, 514 So. 2d 1227, 1232 (Miss. 1987).

***Barnes v. Singing River Hosp. Sys.***, 733 So. 2d 199, 202 (Miss. 1999); *see* ***Stockstill v. State***, 854 So. 2d 1017, 1023 (Miss. 2003) ("[T]his Court has also consistently held that errors raised for the first time on appeal will not be considered, especially where

constitutional questions are concerned." (internal quotation mark omitted) (quoting *Marcum v. Hancock Cty. Sch. Dist.*, 741 So. 2d 234, 238 (Miss. 1999))).

¶25.    While it is true that this Court has ruled that it will not consider a constitutional challenge that was not presented to the trial court first, it also is true that this Court has said that it will depart from "this premise only in unusual circumstances." *Barnes*, 733 So. 2d at 202 (internal quotation mark omitted) (quoting *Educ. Placement Servs. v. Wilson*, 487 So. 2d 1316, 1320 (Miss. 1986)); *see Pascagoula School Dist. v. Tucker*, 91 So. 3d 598, 603 (Miss. 2012); *Cockrell v. Pearl River Valley Water Supply Dist.*, 865 So. 2d 357, 360 (Miss. 2004). Hollywood Casinos claims that this case falls into the unusual circumstances category.

¶26.    This Court in *Pascagoula School District v. Tucker* found that even though the Pascagoula School District did not raise its constitutional argument "until their motion to stay before the chancery court[,]" this case "presented such an unusual circumstance" that it "compell[ed] [this Court] to address the merits of the plaintiffs' [constitutional] argument." *Pascagoula Sch. Dist. v. Tucker*, 91 So. 3d 598, 603 (Miss. 2012) (alterations in original). This Court found that *Pascagoula* presented an unusual circumstance because the defendants were aware of the constitutional argument, they addressed the issue in their briefs, they were not prejudiced by "the plaintiffs' failure to raise this issue in their initial pleadings[,]" and the issue was a matter of grave importance. *Pascagoula*, 91 So. 3d at 604-05. As such, the *Pascagoula* Court determined that "[i]t would serve no purpose to delay" this Court's answer when that delay would allow a harm to continue. *Pascagoula*, 91 So. 3d at 604.

12

¶27. We find that the case at hand also presents an unusual circumstance for reasons similar to those found in *Pascagoula*.

¶28. As with the defendants in *Pascagoula*, neither the MDOR, the MGC, nor the State itself was prejudiced here because each was aware of this argument, and they have addressed the issue in their appellate brief. Accordingly, Hollywood Casinos's failure to challenge the constitutionality of Section 27-77-7(5) in the trial court did not prejudice the defendants here. *See Pascagoula*, 91 So. 3d at 604-05.

¶29. Also, this case involves a matter of grave importance for Mississippi taxpayers and for this Court, and there would be no purpose in our delaying its resolution. *See Pascagoula*, 91 So. 3d at 604. This matter is of grave importance for taxpayers because the deference portion of Section 27-77-7(5) is in conflict with this Court's holding in *King*, which established a new standard of review that applies to this case. *See King*, 245 So. 3d at 407-08. It is a matter of grave importance for this Court because this statute infringes on the judicial branch's exclusive power to interpret statutes and its ability to "fulfill [its] duty to exercise [its] independent judgment about what the law *is*." *King*, 245 So. 3d at 408 (internal quotation mark omitted) (quoting *Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1158 (10th Cir. 2016) (Gorsuch, J., concurring)).

¶30. Likewise, delaying this issue and awaiting another case that followed more scrupulously the prescribed procedure serves no useful purpose. This Court has ruled in *King* that the type of deference dictated by Section 27-77-7(5) violates the constitutional doctrine of separation of powers, and delaying a clear adjudication of such could cause more harm

13

while this Court waits for a procedurally pristine case. *See **King***, 245 So. 3d at 408. To delay

such a decision would leave the trial courts, the Court of Appeals, and the legal community

at large in a state of uncertainty about whether the judicial branch is to give deference to

agency interpretations of statutes.

¶31.    We find that this case presents an unusual circumstance that requires this Court to

decide the constitutionality of Section 27-77-7(5).

> **B.    Does our holding in *King* apply to this case?**

¶32.    Hollywood Casinos challenges the constitutionality of the deferential treatment

mandated by Section 27-77-7(5) and cites our analysis in ***King*** for support. The MDOR and

the MGC assert that ***King*** is distinguishable from the current case because ***King*** "addressed

the common law deference in regards to how an agency interpreted a statute"; here, the

agency interpretations of the statutes are found within "duly-enacted regulations," which is

"an area that the ***King*** Court specifically declined to address."

¶33.    In ***King***, this Court found that "[d]eferential review of executive-branch statutory

interpretations gives rise to another problem under Mississippi's strict constitutional

separation of powers." ***King***, 245 So. 3d at 407. Also, this Court stated,

> Executive-branch agencies must follow statutes and, absent a declaration from
> the judicial branch regarding an interpretation of a statute, must decide what
> statutes mean. However, when the interpretation of a statute comes before the
> courts, and when deference is given to an agency interpretation, we share the
> exercise of the power of statutory interpretation with another branch in
> violation of Article 1, Section 2.

***King***, 245 So. 3d at 408. Thus, we have ruled that agency interpretations of statutes no longer

will receive deferential treatment because doing so creates a conflict with the separation of

powers doctrine and that this Court will "step fully into the role the Constitution of 1890 provides for the courts and the courts alone, to interpret statutes." *Id.*

¶34. We find no difference between this case and *King*. Although *King* did not elaborate on whether it applied to agency interpretations of statutes reflected in duly enacted regulations, we find that *King* applies here because its ultimate finding is applicable to any case in which an agency interprets a statute. *See King*, 245 So. 3d at 407-08. Interpreting statutes is reserved exclusively for courts.

¶35. The MDOR and the MGC argue that the constitutional separation of powers doctrine is not offended here because Section 27-77-7(5) states that appeals are to be tried *de novo* and a full evidentiary hearing is to be conducted, thus preserving the power of the courts to interpret statutes as they see fit. But this argument is invalidated by our analysis in *King*. *See King*, 245 So. 3d at 407. The Court in *King* found that *de novo* review does not save the judiciary's power to interpret statutes free of deferential treatment because giving a "*de novo* but deferential review" is a contradiction that "creates a confusing and vague standard." *Id.*

¶36. The MDOR and the MGC claim that the deferential language in Section 27-77-7(5) asks courts merely to give a small degree of deference to agency interpretations. The United States Supreme Court stated in *Skidmore v. Swift & Co.* that the interpretations and opinions of administrative agencies are not controlling on courts and that courts should look to those interpretations for guidance only. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944). While this Court is not bound by *Skidmore*, neither *King* nor our

decision today prevents or prohibits Mississippi courts from looking to regulations for information and guidance. *See King*, 245 So. 3d at 407-08.

¶37.    We find, beyond a reasonable doubt and consistent with our analysis and holding in *King*, that the deferential standard prescribed in Code Section 27-77-7(5) is unconstitutional because it violates the separation of powers doctrine of our state constitution. *See* Miss. Const. art 1, §§ 1, 2.

### III.    Did the chancellor defer to the MDOR's and the MGC's regulations when interpreting Section 75-76-193?

¶38.    Since the deferential standard within Section 27-77-7(5) does not pass constitutional muster, we must determine whether the chancellor erred by giving deferential treatment to the MDOR's or the MGC's regulations that interpret Section 75-76-193.

### A.    Chancellor's Determination

¶39.    While the chancellor did conduct her own "analysis of the statutory language and the applicable regulations, as well as persuasive case law," she also applied deferential treatment to the MDOR's and the MGC's interpretations to her analysis. Throughout the chancellor's analysis, she referenced terms that were found only in the MDOR's or the MGC's regulations and not in the language of the statute. Code Section 75-76-193(2) used the broad term "legitimate wager," whereas the MDOR's and the MGC's regulations replaced "legitimate wager" with more specific terms, such as "coin out," "specific wager," and "direct result" of slot machine play. Miss. Code Ann. § 75-76-193 (Rev. 2016); *see* 35 Miss. Admin. Code Pt. V, R. 4.01(100)(11) (adopted Nov. 17, 2011), Westlaw; 13 Miss. Admin. Code Pt. 7, R.

16

3.3(b), (k) (adopted May 1, 2013), Westlaw. While we agree that each of these could be a legitimate wager, the chancellor's short list is not exhaustive.

¶40.    The chancellor should have considered all the ways the property given away could have been products of legitimate wagers rather than deferring to the examples listed in the MDOR's and the MGC's regulations. Not only did the chancellor limit her consideration to the short list of terms found within the agency interpretations, she also expressed a belief that she had the right to defer to the MDOR's and the MGC's regulatory interpretations, rather than taking into account the possible applicability of *Greenwood*. Thus, we find that the chancellor erred by giving deference to the regulatory interpretations of Section 75-76-193 rather than conducting a *de novo* review.[5]

¶41.    In light of the chancellor's error in deferring to the MDOR's and the MGC's interpretations of Section 75-76-193, we proceed to conduct our *de novo* interpretation of the statute to ascertain whether Section 75-76-193 applies to Hollywood Casinos' rewards programs' random drawings.

B.    **Plain Language of Section 75-76-193**

¶42.    Mississippi Code Section 75-76-193 deals with the calculation of gross revenue and allows tax deductions:

> (1) In calculating gross revenue, any prizes, premiums, drawings, benefits or tickets which are redeemable for money or merchandise or other promotional

---

[5]This Court does not suggest that agencies cannot promulgate regulations and interpret them. But when an agency creates a regulation that interprets a statute, courts must conduct a *de novo* review when the statute is under judicial consideration because the judiciary is the only governmental branch with the constitutional power to interpret statutes. *See* Miss. Const. art 1, § 1.

allowance, except money or tokens paid at face value directly to a patron as the result of a specific wager and the amount the cash paid to purchase an annuity to fund winnings paid to that patron over several years by an independent financial institution, must not be deducted as losses from winnings at any game except a slot machine.

(2) In calculating gross revenue from slot machines, the actual cost to the licensee of any personal property distributed to a patron as the result of a legitimate wager may be deducted as a loss, but not travel expenses, food, refreshments, lodging or services.

Miss. Code Ann. § 75-76-193 (Rev. 2016).

¶43.    Hollywood Casinos asserts that the MDOR's and the MGC's regulations are contrary to the "unambiguous terms or best reading of the statute," which, it contends, clearly and unambiguously allows it to deduct from its gross revenue the cost of the prizes won by its Marque Rewards members for slot machine play. *See **Buffington v. Miss. State Tax Comm'n***, 43 So. 3d 450, 454 (Miss. 2010) (citing ***Miss. Methodist Hosp. and Rehab. Ctr.***, 21 So. 3d at 606-07). Hollywood Casinos claims that the plain language of Section 75-76-193(2) focuses on whether a prize was won as a result of a legitimate slot machine wager, rather than as a result of a specific slot machine or coin-out transaction, as required by the MDOR's and the MGC's regulations. *See* 35 Miss. Admin. Code Pt. V, R. 4.01(100)(11); 13 Miss. Admin. Code Pt. 7, R. 3.3(b), (k).

¶44.    Hollywood Casinos relies on a 2014 Pennsylvania case in which the Pennsylvania court utilized its rules of statutory interpretation and found that promotional awards were deductible as a result of playing any slot machine, rather than as a result of play that was "tied to the play of a specific slot machine at a specific time." ***Greenwood***, 90 A.3d at 714. The rules of statutory interpretation in Pennsylvania provide that "statutes that define what

18

property is and is not subject to taxation[, i.e., tax exclusions,] are interpreted strictly in the favor of the taxpayer and against the Commonwealth." *Id.* (citing 1 Pa. Stat. and Cons. Stat. Ann. § 1928(b)(3) (West, Westlaw through 2020 Reg. Sess.)). But in Mississippi, the general rule regarding tax exemptions is:

> Since taxation is the rule and exemption is the exception, and since exemptions from taxation are not favored, [the] general rule is that a grant of exemption from taxation is never presumed; on the contrary, in all cases having doubt as to legislative intention . . . [the] presumption is in favor of the taxing power, and [the] burden is on [the] claimant to prove or establish clearly his right to exemption, bringing himself clearly within terms of such conditions [as] that statute may impose.

*Fishbelt Feeds, Inc. v. Miss. Dep't of Revenue*, 158 So. 3d 984, 991 (Miss. 2014) (alterations in original) (quoting *Miss. Dep't of Revenue v. Pikco Fin., Inc.*, 97 So. 3d 1203, 1210 (Miss. 2012)). Further, "[t]he taxpayer has the burden of proving that the facts bring the case squarely within the deduction provisions of the statute." *Purcell Co., Inc. v. Miss. State Tax Comm'n*, 569 So. 2d 297, 301 (Miss. 1990) (citing *State v. L. & A. Contracting Co.*, 241 Miss. 783, 133 So. 2d 546, 549 (1961)). Therefore, there is no favorable presumption for the taxpayer in this case, as there was under Pennsylvania law in *Greenwood*.

¶45.     Also, the Pennsylvania statute requires the property (the prize) to be the "result of playing a slot machine," *Greenwood*, 90 A.3d at 702 (quoting 4 Pa. Stat. and Cons. Stat. Ann. § 1103 (West, Westlaw through 2020 Reg. Sess.)), while Mississippi's statute requires the property to be the "result of a legitimate wager." Miss. Code Ann. § 75-76-193(2).

¶46.    Because Pennsylvania and Mississippi have different rules of statutory interpretation regarding tax presumptions and the statute in *Greenwood* contained different language than that in our statute, we find that *Greenwood* is not analogous to this case.

¶47.    The MDOR and the MGC contend that because Hollywood Casinos' Marque Rewards program is not a "gambling game," but instead is a "promotional activity" under the definitions under Section 75-76-5(nn), Section 75-76-193 does not apply. Code Section 75-76-5(nn) defines promotional activity as

> [A]n activity or event conducted or held for the purpose of promoting or marketing the individual licensed gaming establishment that is engaging in the promotional activity. The term includes, but is not limited to, a game of any kind other than as defined in paragraph (k) of this section, a tournament, a contest, a drawing, or a promotion of any kind.

Miss. Code Ann. § 75-76-5(nn) (Rev. 2016). The same section defines a gambling game as

> [A]ny banking or percentage game played with cards, with dice or with any mechanical, electromechanical or electronic device or machine for money, property, checks, credit or any representative of value, including, without limiting, the generality of the foregoing, . . . , slot machine, . . . However, "game" or "gambling game" shall not include bingo games or raffles which are held pursuant to the provisions of Section 97-33-51, or the illegal gambling activities described in Section 97-33-8.

Miss. Code Ann. § 75-76-5(k) (Rev. 2016). A slot machine clearly is described statutorily as a gambling game, but a drawing is described as a promotional activity. *See* Miss. Code Ann. § 75-76-5(nn); Miss. Code Ann. § 75-76-5(k). In *Ameristar Casino Vicksburg, Inc. v. Duckworth*, the Court found that a casino's reward-members-only promotional drawing, by which members gained entry based on their play and were chosen randomly, was not a gambling game as contemplated by Section 75-76-5(k). *Ameristar Casino Vicksburg, Inc.*

20

*v. Duckworth*, 990 So. 2d 758, 758-60 (Miss. 2008). The manner in which rewards members here and the rewards members in *Ameristar* gained entry into their drawings is similar to the extent that members earned entries based on their casino play and by displaying their membership cards. *See id.* at 760. Thus, the property given away by Hollywood Casinos through its rewards program was a promotional activity under Section 75-76-5(nn), not slot machine play under Section 75-76-5(k); therefore, Hollywood Casinos cannot deduct the cost of the prizes as a loss under Section 75-76-193(2).

¶48.    Hollywood Casinos claims it has presented data that shows that these prizes resulted from entries earned through slot machine play. But the data provided by Hollywood Casinos fails to demonstrate that the prizes were the result of slot machine play. The data shows that the drawings provided multiple ways for rewards members to earn entry into the drawings: (1) table play or slot machine play, or (2) slot machine play or kiosk. This Court finds no drawings based exclusively on slot machine play. Hollywood Casinos failed to provide evidence that, in a drawing that allowed entries by both slot and table play, it could determine the winning member had won based on an entry earned through slot machine play and not based on table play.

¶49.    Additionally, the MDOR and the MGC contend Hollywood Casinos' rewards programs' giveaways are not the "result of a legitimate wager" under Section 75-76-193(2). This Court finds that because the rewards program fails to satisfy Subsection 1's requirement of the prizes' having been derived from slot machine play, which is dispositive, the issue of whether the giveaways were the result of legitimate wagers does not warrant discussion.

21

¶50. It is clear from the plain language of Section 75-76-5(nn) and (k) that Hollywood Casinos Marque Rewards program's random computerized drawings fall within the definition of a promotional activity, not that of slot machine play, a gambling game. This Court has held that a random drawing is not a gambling game; therefore, a random computerized drawing is not and cannot be a slot machine, which is a gambling game. *See Ameristar*, 990 So. 2d at 760. Also, the plain language of Section 75-76-193(1) provides clearly that the prizes are required to be from slot machine play. Miss. Code Ann. § 75-76-193(1). We find that Hollywood Casinos failed to demonstrate that its rewards programs' drawings resulted from slot machine play only and that the drawing was not a promotional activity under Section 75-76-5(nn).

### IV. Did the chancellor err by not finding there were genuine issues of material fact?

¶51. Hollywood Casinos asserts that the chancellor should not have granted summary judgment because there were genuine issues of material fact: "the nexus of the relationship between the personal property delivered to Hollywood Casino's Marque Rewards members and slot machine play." This Court finds that even though the chancellor erred by giving deference to the MDOR's and the MGC's interpretations of Section 75-76-193, based on our above analysis, the chancellor nevertheless came to the correct conclusion that there were no genuine issues of material fact. This Court has stated that "we will not reverse a lower court's decision where that court reaches the right conclusion although for the wrong reason." *Briggs v. Benjamin*, 467 So. 2d 932, 934 (Miss. 1985) (citing *Huffman v. Griffin*, 337 So. 2d 715 (Miss. 1976)). Hollywood Casinos failed to demonstrate that its random computerized

22

drawings fall under Section 75-76-193. Hollywood Casinos failed also to show that it can determine that the drawing winners had won as the result of slot machine play. Hollywood Casinos claims it has data to that affect, but that data is insufficient to show that Hollywood could determine whether a winning member had won through slot machine play or by table play. Therefore, we find that no genuine issues of material fact existed and that the chancellor correctly granted summary judgment to the MDOR and the MGC.

<b><u>CONCLUSION</u></b>

¶52.    We find beyond a reasonable doubt, based on our decision in *King*, that the deferential review mandated by Mississippi Code Section 27-77-7(5) violates the separation of powers doctrine and is unconstitutional. While the chancellor gave deferential treatment to the MDOR's and the MGC's regulations interpreting Section 75-76-193, we find that ultimately, she came to the correct conclusion that there were no genuine issues of material fact. Section 75-76-193 states plainly that the prizes must have been won from slot machine play to qualify as legitimate wagers. Hollywood Casinos failed to prove that its reward program conformed to that requirement. Accordingly, this Court affirms the chancellor's grant of summary judgment to the MDOR and the MGC.

¶53.    **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

23